STATE OF CONNECTICUT *v.* WILLIAM
TOBY WRIGHT, SR.
(11545)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 6, 1985—decision released January 14, 1986

*Louis S. Avitabile,* special public defender, for the appellant (defendant).

*Christopher D. Bernard,* special assistant state's attorney, with whom was *John A. Connelly,* state's attorney, for the appellee (state).

CALLAHAN, J. On April 30, 1981, at about 1 p.m. Andrew Ragland was stabbed to death on Hawkins Street in Waterbury. The defendant, William Toby Wright, Sr., was accused of committing the stabbing and was charged in a two-part indictment with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1)[1] and with being a persistent dangerous felony offender in violation of General Stat-

[1] General Statutes § 53a-55 (a) (1) provides in pertinent part: "Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is

utes (Rev. to 1981) § 53a-40 (a).[2] The defendant was found guilty by a jury of manslaughter in the first degree as charged in the first part of the indictment. He was later found to be a persistent dangerous felony offender by another jury. The defendant was sentenced to imprisonment for a term of twenty-five years to life. See General Statutes (Rev. to 1981) § 53a-40 (e).[3] The defendant has appealed claiming that the trial court erred in several respects. We find error in the trial court's admission of evidence of the defendant's prior convictions which was offered by the state in order to impeach his credibility at the trial on the first part of the indictment. Since we must reverse and order

guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes (Rev. to 1981) § 53a-40 (a) provides in pertinent part: "Sec. 53a-40. . . . PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault, in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in section 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2)."

[3] General Statutes (Rev. to 1981) § 53a-40 (e) provides in pertinent part: "Sec. 53a-40. . . . PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. . . . (e) When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by said section for a class A felony."

a new trial, we will consider in this opinion only that error and, briefly, any rulings of the trial court which may arise on a retrial.

A short summary of the evidence adduced at the trial will place the defendant's claims in context. At the trial on the first part of the indictment, there was testimony elicited that the defendant and the victim had an argument over a drug transaction on April 30, 1981, at about 1 p.m. A physical altercation ensued during which the defendant was seen to push the victim against a fence and to produce a knife. According to an eyewitness, the defendant then "went up against" the victim and ran from the scene with a knife in his hand. The victim collapsed on Hawkins Street and died shortly after the incident. An autopsy revealed that he had suffered two stab wounds in the chest area, one of which caused his death.

The defendant testified that it was the victim who produced a knife, which he swung at the defendant, slashing the defendant's hand. The defendant also testified that he and the victim wrestled on the ground and that the victim may have been stabbed twice in the chest during the struggle. The defendant claimed that he acted in self-defense. There was also evidence that the defendant ran from the scene of the encounter to his mother's house. There he changed his clothes and went to his sister-in-law's apartment on Harris Circle in Waterbury. He was apprehended by the Waterbury police in a bedroom at his sister-in-law's home about 6 a.m. the day following the incident. The defendant testified that he learned on the night of April 30 that Andrew Ragland had died. He also testified that he did not seek medical attention for the laceration to his hand although it was quite severe, and that he made no effort to contact the authorities before he was apprehended.

After the jury had found the defendant guilty on the first part of the indictment, the defendant was tried on the second part by another jury, which found him to be

a persistent dangerous felony offender. The second part of the indictment was premised on the defendant's conviction of manslaughter in the first degree on November 18, 1977. The trial court in 1977 imposed a sentence of not less than five nor more than fourteen years. On the same day, the defendant was also sentenced for two counts of assault in the first degree which arose out of the same incident as the manslaughter count. He received concurrent sentences. The defendant commenced service of his sentences and was released on parole in October, 1980.

Prior to his trial on the first part of the indictment, the defendant filed a motion in limine requesting the trial court to prohibit the state from using his prior conviction of manslaughter and his two prior convictions of assault to impeach his credibility. In 1977, as they are now, all three crimes were class B felonies which were punishable by a maximum term of twenty years imprisonment.

The defendant reclaimed his motion in limine at the close of the state's case and again after the defendant's direct testimony. He claimed then, as he claims on this appeal, that the prejudicial effect of evidence of his multiple convictions for crimes of violence far outweighed any probative value as to his credibility and should have been excluded. We agree.

"This court has not imposed any restriction upon the nature of the crime which may be used for impeachment, except in terms of its seriousness as measured by the punishment provided by statute . . . ." *State* v. *Nardini,* 187 Conn. 513, 524, 447 A.2d 396 (1982). All three of the defendant's prior convictions were potentially admissible under General Statutes (Rev. to 1981) § 52-145[4] which we have interpreted to permit the use of a defendant's

---

[4] General Statutes (Rev. to 1981) § 52-145 provides: "Sec. 52-145. INTERESTED WITNESS NOT DISQUALIFIED; CREDIBILITY. No person shall be disqualified as a witness in any action by reason of his interest in the event of the same as a party or otherwise, or of his disbelief in the existence of a supreme being, or of his conviction of crime; but such interest or conviction may be shown for the purpose of affecting his credit."

prior conviction to impeach credibility where the conviction was for a crime punishable by imprisonment in excess of one year. *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341 (1965). But evidence of prior criminal convictions is not per se admissible. *State* v. *Geyer,* 194 Conn. 1, 11, 480 A.2d 489 (1984). We have recognized that the "inherent authority of the trial court to exclude evidence where its prejudicial tendency outweighs its probative value is particularly applicable to prior convictions otherwise qualifying for admission." *State* v. *Nardini,* supra, 521. "We believe that if a defendant testifies and, thereafter, evidence of a prior conviction is offered under circumstances in which its prejudicial effect far outweighs its materiality and relevancy on the issue of credibility in a criminal trial its admissibility should be determined by the exercise of a sound judicial discretion." *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970).

Despite our usual deference to the trial court's discretion in this area, we conclude that the trial court unreasonably exercised that discretion in finding that evidence of the three convictions for violent crimes had a probative value, on the issue of the defendant's credibility, that outweighed the resulting prejudice. "Acts of violence . . . generally have little or no direct bearing on honesty and veracity." *Gordon* v. *United States,* 383 F.2d 936, 940 (D.C. Cir. 1967). The defendant's convictions, although they reflect adversely on his general character, have no special or direct materiality as to his credibility. *State* v. *Geyer,* supra, 13. The obvious effect of bringing to the jury's attention the defendant's prior multiple convictions for crimes of violence was to establish that the defendant was a violent person. When one of those violent crimes was manslaughter in the first degree, the very crime for which the defendant was on trial, the pressure on the jurors to believe that " 'if he did it before he probably did so this time' " must have been extreme. *State* v. *Keiser,* 196 Conn. 122, 130, 491 A.2d 382 (1985), quot-

ing *Gordon* v. *United States,* supra. Under the circumstances, the instructions given by the trial court to the jury to use the convictions only on the issue of credibility could not have eliminated that pressure.

"Where the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility." *State* v. *Nardini,* supra, 522. But crimes of violence do not have "the special probative value on the issue of credibility which a conviction of a crime involving dishonesty would carry." *State* v. *Carter,* 189 Conn. 631, 644, 458 A.2d 379 (1983). Convictions of crimes of violence may indicate only a short fuse or a combative nature which, while not commendable traits, are not particularly probative on the issue of credibility. *Gordon* v. *United States,* supra.

When the jury learned that the defendant had previously been convicted of manslaughter in the first degree and of two counts of assault in the first degree, the prejudice created was manifest. When the jury learned, as it did moments later, that the defendant had been released from prison only six months before the victim was stabbed to death, that evidence had to be devastating. We conclude, therefore, that, under the circumstances of this case, the prejudice generated by the admission of evidence of the defendant's convictions clearly outweighed the significance of those convictions on the issue of his veracity. The trial court abused its discretion in finding to the contrary.

The defendant has raised several other claims which require brief discussion because they may arise in the event of a retrial. The first claim is that the trial court erred when it instructed the jury that it could consider the interest of the defendant in "the decision they were about to render" in weighing his testimony and determining his credibility. The defendant took an exception to the trial court's charge and also moved for a mistrial

claiming that singling out the testimony of the accused from the other witnesses violated his state constitutional right to testify. See Conn. Const., art. I § 8.

This court has rejected the claim that this instruction was inconsistent with the presumption of innocence and denied an accused his right to due process of law. *State v. Avcollie,* 188 Conn. 626, 636–37, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983). "We have repeatedly considered and rejected this constitutional claim and again find it to be totally without merit." *State v. Frazier,* 194 Conn. 233, 239, 478 A.2d 1013 (1984). "The rule is well settled in this state that the court may advise the jury that in weighing the credibility of an accused's testimony they can consider his interest in the outcome of the trial." *State v. Guthridge,* 164 Conn. 145, 151, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973). In *State v. King,* 187 Conn. 292, 303–304, 445 A.2d 901 (1982), which was cited by the defendant in his brief, this court mentioned the state constitutional right of the accused to testify. *King* did not effect any fundamental change in the law and is not a basis for changing this well established rule. The trial court's instruction did not violate the constitutional right of the accused to testify. *State v. Maselli,* 182 Conn. 66, 74, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981).

The defendant's next claim is that the trial court erred by instructing the jury that it could consider his conduct in leaving the scene of the crime and that evidence of flight, if unexplained, tended to prove a consciousness of guilt. The defendant argues that under the circumstances of this case the evidence was equivocal as to the defendant's reasons for leaving the scene and that the court should not have given an instruction on flight at all. He contends that if an instruction were to be given, it should have been more complete and should have included all the possible innocent explanations for his flight.

"Flight, when unexplained, tends to prove a consciousness of guilt." *State* v. *Ferrara,* 176 Conn. 508, 516, 408 A.2d 265 (1979). "Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of flight inadmissible but simply constitutes a factor for the jury's consideration." *State* v. *Piskorski,* 177 Conn. 677, 723, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). "The probative value of evidence of flight depends upon all the facts and circumstances and is a question of fact for the jury." *State* v. *Nemeth,* 182 Conn. 403, 408, 438 A.2d 120 (1980).

There was evidence that, immediately after the victim had been stabbed, the defendant ran to his mother's house, where he was living at the time, changed his clothes and wiped up blood. He then went to his sister-in-law's apartment, where he was apprehended by the police the next day. He did not seek treatment for a serious wound to his hand and he did not contact the authorities even after he learned that the victim had died. The jury could have found that this conduct constituted evidence of flight which tended to show a consciousness of guilt. The defendant contends that he left the scene out of concern that the incident might cause problems with the victim's drug suppliers and might be considered a violation of his parole even though he acted in self-defense. The court instructed the jury that it was up to them to determine what weight to accord evidence of flight and what weight it would give to any explanation. The court was not required to enumerate all the possible innocent explanations offered by the defendant. The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. *United States* v. *Mesa,* 660 F.2d 1070, 1078 (5th Cir. 1981).

The defendant's next claim is that General Statutes § 53a-40 (a) is unconstitutional because it requires only one prior conviction and sentence of imprisonment for the accused to be found a persistent dangerous felony offender so as to expose him to the escalated penalties of General Statutes § 53a-40 (e). The defendant does not claim, as indeed he cannot, that persistent offender statutes are per se unconstitutional. "[T]he constitutionality of persistent offender statutes has long been upheld." *State* v. *Williams,* 173 Conn. 545, 557, 378 A.2d 588 (1977). He contends, rather, that a single prior conviction and term of imprisonment are not enough to label him as a persistent dangerous felony offender. He argues that to be treated as a persistent dangerous felony offender one must be truly a persistent or habitual offender and that by the very definition of "persistent" one prior conviction is insufficient. The defendant cites no authority for his position.

"A party contesting a statute's constitutionality has a heavy burden to prove unconstitutionality beyond a reasonable doubt." *State* v. *Dupree,* 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S.    , 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985); see *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972). "The classification of crimes is for the legislature." *State* v. *Dupree,* supra, 665; see *State* v. *Rao,* 171 Conn. 600, 603, 370 A.2d 1310 (1976). "In examining the rationality of a legislative classification, we are bound to defer to the judgment of the legislature unless the classification is clearly irrational and unreasonable." *State* v. Dupree, supra; *State* v. *Simmat,* 184 Conn. 222, 224–25, 439 A.2d 915 (1981).

The defendant has failed to sustain his burden of demonstrating beyond a reasonable doubt that the legislature acted irrationally and unreasonably in legislating authority for the courts to punish more severely, as a persistent dangerous felony offender, an accused who has once previously been convicted and imprisoned for specified crimes. Further, this court has "implicitly recognized that a single prior conviction and imprisonment as specified in [Gen-

eral Statutes § 53a-40 (a)] provides a sufficient factual basis for a guilty plea to a charge of being a persistent dangerous felony offender." *State* v. *Tyson,* 195 Conn. 326, 331, 487 A.2d 1091 (1985); see *State* v. *Williams,* supra, 554–57. There is no merit to this claim of the defendant.

The defendant's final claim which we will consider is that his 1977 conviction for manslaughter in the first degree should not have been admitted in evidence on the trial of the second part of the indictment. He contends that his guilty plea to that charge on October 13, 1977, was constitutionally infirm because the record of the plea canvass by the trial court does not reflect a knowing and intelligent plea, particularly because he was not explicitly advised of his right to a jury trial. We disagree.

Collateral attacks on judgments are not favored. Every presumption favors the jurisdiction of the court and the regularity of its processes. *Monroe* v. *Monroe,* 177 Conn. 173, 177, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). We refuse to hold that a predicate conviction upon a guilty plea attacked collaterally years after its entry is invalid solely because the trial court failed to enumerate specifically all the rights to which the defendant was entitled and to elicit from him a list of detailed waivers before accepting the guilty plea. *People* v. *Harris,* 61 N.Y.2d 9, 16, 459 N.E.2d 170, 471 N.Y.S.2d 61 (1983).

The defendant was represented at the time of his plea by counsel who, the record reveals, had thoroughly investigated the case, had engaged in lengthy plea negotiations with the state, and had discussed the case with the defendant. See *People* v. *Harris,* supra. It is obvious from the record that the defendant was aware of the elements of the crime with which he was charged, his rights and his options. See *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 160 (1970). The defendant knowingly, intelligently and voluntarily entered his plea

on October 13, 1977. Therefore, the record of his conviction of manslaughter in the first degree based on that plea was properly admitted on the trial of the second part of the indictment. There was no error in this regard.

There is error, the judgment is set aside and a new trial is ordered.[5]

In this opinion the other judges concurred.

---

[5] The defendant also claims that the trial court erred when it denied his motion for acquittal at the close of the state's case on part B of the indictment. There was evidence presented to the jury which tried that portion of the indictment that the defendant's present conviction for manslaughter in the first degree occurred on March 30, 1982. There was also evidence that the defendant had pleaded guilty to the predicate felony of manslaughter in the first degree on October 13, 1977, had been sentenced for that crime on November 18, 1977, and was imprisoned as a result until October 25, 1980. The state, however, neglected to present evidence of the date of the *commission* of the present offense of manslaughter. The defendant contends, therefore, that there was no evidence that the events which led to his present conviction occurred after he had been previously convicted and imprisoned under a sentence of more than one year for the predicate felony as required by General Statutes (Rev. to 1981) § 53a-40 (a). It is the defendant's claim, therefore, that there was insufficient evidence for the jury to have found proven beyond a reasonable doubt that he was a persistent dangerous felony offender. We disagree.

We must construe the evidence in the light most favorable to sustaining the jury's verdict. *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981). "There is no legal distinction between direct and circumstantial evidence as far as probative force is concerned." *State* v. *Cari,* 163 Conn. 174, 179, 303 A.2d 7 (1972). It is the function of the jury to draw reasonable inferences from the facts proven. *State* v. *Belton,* 190 Conn. 496, 504, 461 A.2d 973 (1983). The due process requirement is met where there is a rational relationship between a fact proved and a fact to be inferred. *State* v. *Little,* 194 Conn. 665, 676, 485 A.2d 913 (1984).

From the circumstantial evidence, the jury could have reasonably inferred that the events leading to the defendant's present conviction of manslaughter occurred after he had been convicted and imprisoned under a sentence of more than one year for the predicate felony.