[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
As the result of his arrest on January 30, 1985 in Middletown, the petitioner was ultimately charged with having violated the following statutes: C.G.S. Sec. 21a-278(b); C.G.S. Sec. 21a-279(a); C.G.S. Sec. 54-33d; C.G.S. Sec. 53a-167(c)(a)(1) and C.G.S. Sec53a-49(a)(2); and C.G.S. Sec. 53a-48(a) and C.G.S. Sec. 21a-277(a).
After a trial in November of 1986 the jury found the petitioner guilty of (1) the Second Count of the amended information charging C.G.S. Sec. 21a-279(a) for possession of cocaine; (2) the Third Count charging C.G.S. Sec. 54-33d for Interference with a Search by the Use of a Deadly Weapon; and (3) the Fourth Count charging C.G.S. Sec.53a-167(a)(1) and Sec. 53a-49(a)(2) for Attempting to Commit Assault on a Peace Officer. The jury acquitted the petitioner of (1) the First Count of the amended information charging C.G.S. Sec. 21a-278(b), Possession of Cocaine with Intent to Sell by a Non-drug Dependent Person and a lesser included charge of Possession of Cocaine with Intent to Sell under C.G.S. Sec. 21a-277(a); and (2) the Fifth Count charging C.G.S. Sec. 53a-48(a) and Sec. 21a-277(a), Conspiring to Sell Cocaine with one Michael Jenkins.
On January 12, 1987 the petitioner was sentenced on C.G.S. Sec.21a-279(a) to a term of imprisonment of four years; on C.G.S. Sec.54-33d, to a term of imprisonment of two years, consecutive, and on C.G.S. Sec. 53a-167c(a)(1) and Sec. 53a-49(a)(2), to a term of imprisonment of one year, consecutive, for a total effective sentence of seven years.
The petitioner's primary claims, raised in his petition for a writ of habeas corpus dated May 2, 1988, all involve alleged ineffective assistance of counsel concerning (1) the admissibility of evidence regarding the criminal convictions of a state's witness and the petitioner himself, (2) jury instructions on reasonable doubt and CT Page 699 conspiracy, and (3) failure of defense counsel to properly advise the petitioner of his appellate rights. The petitioner has also claimed in paragraphs 2h and 2i of his petition that the alleged errors referred to above have denied the petitioner due process of law in violation of his rights under the Fourteenth Amendment of the United States Constitution and under Article I of the Connecticut Constitution in that the alleged errors produced a trial which was fundamentally unfair.
In State v. Leecan, 198 Conn. 517, 541-42 (1986) the Connecticut Supreme Court decided to permit review of claims of ineffective assistance of trial counsel in habeas corpus proceedings, where the sole claim for relief is ineffective assistance. Here, there is an additional due process claim, the precise nature of which was not explained in the pretrial brief or at the hearing of April 12, 1990.
The court declines to review the petitioner's "due process" claim. "Collateral attacks on judgments are not favored." Oppel v. Lopes, 200 Conn. 553, 555 (1986), quoting State v. Wright, 198 Conn. 273,283 (1986). There is no allegation that the petitioner can show that some objective factor external to the defendant impeded counsel's efforts. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639,91 L.Ed.2d 397 (1986). Nor is there an allegation that the claim to be raised is novel, thereby excusing "cause." Smith v. Murray, 477 U.S. 527,536-37, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). To mount a successful collateral attack on his conviction a habeas petitioner must demonstrate "a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal." D'Amico v. Manson, 193 Conn. 144 156-57 (1984).
Because this "due process" claim and the "ineffective assistance" claims concern the same underlying allegations, the petitioner will not be denied a review of the substance of his argument by the court's decision not to review his due process claim. Further, the court will not apply the deliberate bypass rule to any of the various claims of ineffective assistance of trial counsel. Valeriano v. Bronson,209 Conn. 75, 85 (1988).
From the record and the testimony it heard, the court finds the following facts:
On January 30, 1985 two undercover police officers went to 702 Atkins Street in Middletown, the residence of Marshall and Kathy Jenkins, from whom one of the officers had previously purchased cocaine. The officers were going there ostensibly to purchase one-half ounce of cocaine for $1000.00 pursuant to an arrangement previously made with Mr. Jenkins, although they had been ordered by their superiors not to turn over the funds, and to effect an arrest on the Jenkins. They had a search warrant for the premises and the persons of the Jenkins. Sometime before the officers arrived, the petitioner, CT Page 700 Fred Greenwell, and his wife, Maria Greenwell, were using cocaine on the premises with Marshall Jenkins. When the officers arrived and became engaged in conversations with the Jenkins, the Greenwells were in a front bedroom. Jenkins went to the front bedroom, obtained cocaine and later a scale and began to weigh the cocaine in the kitchen in the presence of the officers when the officers pulled their weapons and identified themselves as police.
The Jenkins apparently did not resist arrest. The Greenwells remained in the front bedroom and would not come out although ordered to do so. One of the officers in the apartment heard the racking noise made by a shotgun from inside the bedroom and retreated. He later saw a female open the bedroom window and ordered her to give up. She did not. Soon other officers arrived in cruisers outside the apartment, after which the undercover officer still in the kitchen saw the bedroom door open and observed the petitioner with a shotgun in his hand. The Greenwells finally exited the bedroom by the window and were apprehended by the officers outside. The petitioner became violent and was subdued. A search of the bedroom revealed the shotgun and white powder on the floor of the bedroom and in the closet. The powder later proved to contain cocaine.
At his trial in November of 1986 the petitioner was represented by special public defender, Attorney John J. Bunce, Jr., then of Rocky Hill, who had been admitted to the Connecticut Bar in 1977 and had previously worked as a special public defender in the judicial district. Bunce had been representing the petitioner since February, 1985 and through at least two pretrial conferences, after which the petitioner had rejected the state's two offers of twenty years and ten years, respectively. Bunce testified that he was concerned about winning the case and so informed the petitioner, who insisted that he and his wife were not aware that Jenkins was engaged in a drug deal.
Bunce felt the petitioner had to testify to have any chance at acquittal and that the petitioner had to convince the jury that he did not take part in the drug transaction and did not realize those persons who were outside trying to gain entrance to the room where he and his wife were barricaded were police officers. As part of their trial strategy it was decided to volunteer information to the jury about the petitioner's prior drug convictions to establish his familiarity with the drug scene and to bolster his claim that the persons with the Jenkins in the kitchen did not act like police officers. The defendant then testified about his prior convictions and in his testimony implicated himself on the possession of cocaine charge. He denied attempting to strike any of the arresting officers. He did admit to possessing and racking the shotgun.
During the course of the trial, Marshall Jenkins testified for the state. He was asked on direct examination about his arrests and convictions, his understanding of the court proceedings and plea CT Page 701 agreements, and efforts to modify his sentence. Bunce attempted to portray Jenkins as the "bad guy" in his cross-examination, he said. His prior convictions were an important part of the trial strategy of the petitioner, according to Bunce.
The trial ended November 6, 1986. The petitioner was convicted of Counts Two, Three and Four, as previously reported. He was acquitted of Counts One and Five. Bunce did not recall discussing the petitioner's appellate rights with him until the day of sentencing, January 12, 1987. On that day, after the sentence took place, Bunce recalls discussing the advisability of an appeal with the petitioner. He recalls telling him that trial counsel (Bunce) should not review the record if a claim of ineffective assistance of counsel was to be made. Bunce gave the petitioner the notice of his right to appeal with related information and the petitioner signed it.
The petitioner now brings this petition claiming ineffective assistance of counsel based upon events that occurred during the trial and at sentencing.
The right to counsel, guaranteed by the 6th amendment via the 14th amendment, "is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 25 L.Ed.2d 763,90 S.Ct. 1441 (1970). In interpreting this requirement, the United States Supreme Court has stated:
 "[W]e must take. . .[the 6th amendment's purpose] — to ensure a fair trial — as the guide. The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. . . .
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction. . .has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings it cannot be said that the conviction. . .resulted from a breakdown in the adversary process that renders the result unreliable." CT Page 702
Strickland v. Washington, 466 U.S. 668, 686-87, 80 L.Ed.2d 674,104 S.Ct. 2052 (1984), reh. denied, 467 U.S. 1267, 82 L.Ed.2d 864,104 S.Ct. 3562 (1984). The Connecticut courts have adopted this analysis judging such claims in state habeas proceedings. Fair v. Warden,211 Conn. 352, 402-404 (1989); Valeriano v. Bronson, 209 Conn. at 85-87. Moreover, the state and federal constitutional standards for review of ineffective assistance of counsel claims are identical. Aillon v. Meachum, 211 Conn. 352, 357 (1989).
"With regard to the performance component of the inquiry, `the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" Id., quoting Strickland,466 U.S. at 687-88; see also State v. Clark. 170 Conn. 273, 283 (1976); Miller v. Angliker, 4 Conn. App. 406, 419 (1985). The Strickland court stated that while prevailing norms of practice are guides in determining what is reasonable, "they are only guides." Strickland v. Washington, 466 U.S. at 688. The court set forth the standard as follows:
 Judicial scrutiny of counsel's performance must be highly deferential. . . .Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' (Citation omitted.). . . .
 A convicted defendant, making a claim of ineffective assistance, must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . .[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
Id., at 689-90. Throughout its opinion, the court cautioned that counsel's performance must be examined in light of the particular circumstances as they existed at the time of trial. Id. Finally, the court noted that "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Id., at 693. CT Page 703
The Connecticut Supreme Court has also noted that "it is perfectly consistent for even a lawyer who commits a grievous error — whether due to negligence or ignorance — to be deemed to have provided competent representation. It is possible to leave out a dispositive issue on appeal and nevertheless, to have furnished a petitioner with adequate counsel under the sixth amendment." Valeriano,209 Conn. at 87, quoting Wainwright v. Sykes, 433 U.S. 72, 105 n. 6 (1977) (Brennan, J., dissenting).
Even if counsel is found to have committed a professionally unreasonable error, this does not warrant setting aside the conviction if the error had no effect on the judgment. Strickland,466 U.S. at 691. Except in limited circumstances, such as an actual conflict of interest, the petitioner "must affirmatively prove prejudice." Id. Moreover, it is not enough to show that the error had some "conceivable effect" on the outcome of the proceeding for "[v]irtually every act or omission of counsel would meet that test." Id. Instead, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. Stated another way, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id., at 695.
In his first claim of ineffective assistance of counsel, found in paragraph 2c of the petition, the petitioner claims that inadmissable evidence regarding the nature of the charges that Marshall Jenkins plead guilty to, involving the petitioner, was introduced without objection by defense counsel. In his second claim, found in paragraph 2d, the petitioner claims that information concerning the guilty plea and plea bargaining negotiations of Marshall Jenkins was introduced, apparently without objection of defense counsel, who, by implication, should have objected.
On direct examination, as a state's witness, Jenkins testified about his involvement with the petitioner, primarily with regard to two of the crimes charged; namely, possession of cocaine with intent to sell and conspiracy to sell cocaine. (Of note is the jury's acquittal of the petitioner of these charges.) There Jenkins testified about his own arrest, charges, plea arrangement, sentencing and possible sentence modification.
The facts of this case are similar to those found in State v. Just, 185 Conn. 339, 343-352 (1981) in which co-conspirators testified as state's witnesses implicating themselves and the accused in the crimes charged. The court noted that testimony of the witnesses was to give the facts and circumstances of the crimes. The testimony as to their guilty pleas gave the circumstances under which they were CT Page 704 testifying, their status with regard to the charge and went to their credibility, as witnesses for the state, Id., at 349. In this case the evidence concerning Jenkins' guilty pleas was not offered to prove the crimes charged as this is prohibited by State v. Pikul, 150 Conn. 195,198-199 (1962), but was offered in the context of explaining the disposition of all of Jenkins' cases. As such the evidence complained of in paragraphs 2c and 2d was admissible.
Since the evidence was admissible, the petitioner cannot sustain the first prong of the two component test of Strickland, supra, i.e., that counsel's performance was deficient. Furthermore, whether the second prong of the test, i.e., prejudice, can be established is highly questionable for the petitioner was acquitted of the two counts which depended upon the testimony of Jenkins.
The petitioner's third claim of ineffective assistance, found in paragraph 2e of the petition, concerns defense counsel's failure to object when the prosecutor cross-examined the petitioner about his prior felony convictions. Specifically, the petitioner admitted that he had been convicted of the felony of breaking and entering with criminal intent and another unnamed felony. (During the petitioner's direct examination he opened the door to the questioning by admitting a felony conviction.)
In State v. Geyer, 194 Conn. 1, 12-13 (1984) the Connecticut Supreme Court discussed the two categories of prior convictions that are admissible for impeachment. First are those crimes that by their nature indicate dishonesty or tendency to make false statements, such as perjury or false statement and crimes involving larcenous intent. The petitioner's first felony conviction was for breaking and entering with criminal intent. Evidence of the conviction was admissible for impeachment purposes. State v. Nardini, 187 Conn. 513, 520-30 (1982). The second category of crimes discussed in Geyer, supra, involves convictions for crimes that do not directly reflect on credibility, which lack the direct probative value of the first category.
In this case, the petitioner's second conviction was unnamed in cross-examination by the prosecutor. This court has no knowledge of whether the crime directly reflected upon the credibility of the petitioner. Certainly the jury did not know and could not have been adversely affected as they might have been if the crime had been named. Admission of evidence of the unnamed felony has been tacitly approved in Geyer, supra.
This court cannot conclude that counsel's performance was deficient as is required by Strickland, supra. The petitioner, on direct, admitted a conviction for a felony. His counsel testified it was part and parcel of a trial strategy to persuade the jury of this petitioner's prior influence in drug dealing and why the bizarre reactions of the strangers in the kitchen convinced the petitioner CT Page 705 they were not police officers. Defense counsel was following the strategy mentioned in State v. Denby, 198 Conn. 23, 26-29 (1985), by revealing derogatory information on direct to avoid the appearance that the witness was concealing something and to preclude opposing counsel from gaining some advantage from exposing indiscretions and transgressions on cross-examination. Notwithstanding this conclusion that counsel's performance was not deficient, the petitioner has failed to prove the second prong of the component test, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the results would have been different, that there would have been a reasonable doubt as to guilt. Strickland, supra, 466 U.S. 694-695.
Even if the admission of the prior convictions was erroneous, the results of the trial would not have been any different. There was ample evidence from police officers that the petitioner interfered with the execution of the search warrant by displaying the shotgun inside the residence and pointing the shotgun outside. He admitted handling it and racking it so that its presence could be heard. The officers also testified as to the petitioner's striking out, kicking, and resisting arrest to prove he attempted to assault police officers. The petitioner, on direct examination, admitted to using cocaine at the Jenkins' residence. When he was in the front bedroom, he was aware of the cocaine that was found on the floor and in the closet, facts which support a conclusion of the jury that he exercised dominion and control over it. Accordingly, this claim is without merit.
The petitioner claims in paragraph 2f that there was an erroneous jury charge on reasonable doubt. He claimed the trial court instructed the jury that proof beyond a reasonable doubt "does not require proof beyond all reasonable doubt." He based his claim on the transcript prepared by the court reporter after the trial.
At the hearing of April 12, 1990, Seymour Feldman, the court reporter at the trial, testified that a review of his stenographic notes revealed that the word "reasonable" was not included in his notes in that portion of the record of the court's instructions, and that he erred in the preparation of the transcript when he typed it from his notes into the transcript. Absent the word "reasonable" the charge was proper. See State v. Butler, 207 Conn. 619, 632-35 (1988). The court has no reason to disbelieve the testimony of Mr. Feldman, a court reporter with twenty-two years experience. There is no merit to this claim of the petitioner.
A similar claim of erroneous instruction by the trial court is found in paragraph 2g of the petition, in this instance directed to the conspiracy charge, of which the petitioner was found not guilty. Suffice it to say, the petitioner can show no prejudice and the claim must fail. Strickland v. Washington, supra, 466 U.S. 694-695. CT Page 706
The final claim of ineffective assistance is found in paragraph 2j of the petition wherein the petitioner alleges his trial counsel erroneously advised him about his appellate rights. Specifically, the petitioner says in his petition that he was told the trial judge committed no error and that there was no basis for taking a direct appeal. At the hearing of April 12, 1990, the petitioner did not say this. He indicated that he was given notice of his rights to appeal and that Attorney Bunce told him not to appeal because he might receive more "time." The petitioner said he took this advice "on faith" and did not appeal.
Attorney Bunce testified, as previously noted, that he informed the petitioner of his appellate rights. He also acknowledged informing the petitioner of the consequences of a successful appeal; e.g., a retrial that could possibly lead to a conviction on the remaining charges and a new sentence. He informed the petitioner, as noted, that claims of ineffective assistance should be made by other counsel. In brief, he testified that he advised his client of his appellate rights with regard to the three charges (of the five original charges) of which he had been convicted, and left the final decision with regard to appeal to his client.
The credibility of the witnesses is an important issue regarding this claim of the petitioner. He claims his attorney said the judge made no error and thus there was no basis for appeal. Attorney Bunce does not recall making this statement. The court concludes that Attorney Bunce is more likely to recall accurately what was said. Even if his recall is spotty, there appears to be nothing wrong with his comment about the judge's performance, if indeed it was said. All in all, this claim of the petitioner is without merit as are his other claims.
The petition is dismissed.
POTTER, J.