******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOSE JUSINO
(AC 38029)

Gruendel, Lavine and Prescott, Js.

*Argued December 8, 2015—officially released March 8, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Mullarkey, J.)

*Pamela S. Nagy*, assistant public defender, for the
appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney,
with whom, on the brief, were *Matthew C. Gedansky*,
state's attorney, and *Andrew Reed Durham*, assistant
state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Jose Jusino, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a and capital felony in violation of General Statutes (Rev. to 2009) § 53a-54b (3).[1] Section 53a-54b provides in relevant part: "A person is guilty of a capital felony who is convicted of . . . (3) murder committed by one who has previously been convicted of intentional murder . . . ." At the time of the murder, the defendant was serving a thirty year sentence after having pleaded guilty in 2006 to a prior charge of murder in violation of § 53a-54a. On appeal, the defendant claims that the trial court (1) deprived him of his constitutional right to due process and a fair trial under the fifth, sixth, and fourteenth amendments by precluding him from introducing evidence at the guilt stage of the capital felony trial to collaterally attack his prior murder conviction; and (2) erred in declining to instruct the jury on the affirmative defense of extreme emotional disturbance. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. Prior to and on July 29, 2009, the defendant was incarcerated at the Northern Correctional Institution pursuant to his 2006 conviction of murder in violation of § 53a-54a. He shared a cell with Reynaldo Robles (victim). On July 29, 2009, the defendant told Correction Officer John Latulippe that the victim was "not waking up . . . ." Correction officers entered the cell and found the unresponsive victim with his hands bound with cloth strips torn from bedsheets The victim had wounds to his chest that spelled out "King Guala." Guala was the defendant's street name, and the defendant used the word "King" to demonstrate his desire to change gang affiliations. The medical staff rendered emergency treatment to the victim and transported him to Johnson Memorial Hospital in Stafford where he was pronounced dead on arrival. A state medical examiner, Frank Evangelista, determined that the death was a homicide and the cause of death was asphyxia by neck compression. Evangelista also determined that the words had been carved into the victim's chest post-mortem.

Correction Officers Tony Williams, Edwin Diaz, and Chris Blais each testified that the defendant admitted to them that he killed the victim. The warden, Angel Quiros, read into evidence the defendant's inmate request form in which the defendant admitted that he killed the victim and wanted to change his gang affiliation. The defendant also gave a written statement to state police Detective Priscilla Vining, confessing that he killed the victim. The defendant was charged with murder in violation of § 53a-54a, and capital felony in violation of § 53a-54b (3), as he had previously been

convicted of intentional murder. The state intended to seek the death penalty.

The trial in this case proceeded in three stages. The defendant was first tried and found guilty of murder in violation of § 53a-54a. The capital felony charge was then tried. The state presented evidence that the defendant previously had been convicted of murder and, thus, was guilty of a capital felony in violation of § 53a-54b (3). The jury found the defendant guilty of capital felony. During the final phase of trial, the penalty phase, the state sought the death penalty by attempting to prove as an aggravating factor that the defendant had committed the murder in an especially heinous, cruel, or depraved manner. General Statutes § 53a-46a (i) (4). The jury found that the state had not proven the aggravating factor. On April 8, 2013, the court sentenced the defendant to life in prison without the possibility of release.[2] After the court denied the defendant's motion for a new trial, the defendant appealed. Additional facts will be set forth as necessary.

I

The defendant claims that the court deprived him of his constitutional right under the sixth and fourteenth amendments to present a defense by precluding him from introducing evidence to collaterally attack his 2006 murder conviction at the guilt phase of his capital felony trial.[3] He asserts that he was entitled to present evidence to the jury that would show that although he had pleaded guilty to murder in 2006, he did not have the specific intent to kill the victim, and therefore was guilty only of manslaughter. He further argues that the jury should have been allowed to consider whether he received effective assistance of counsel in pleading guilty. He claimed that his attorney had failed to investigate evidence that could have shown that he lacked the specific intent to kill. The defendant asserts that the court's refusal to allow the jury to hear this evidence infringed on his constitutional right to present a defense on the charge of capital felony and relieved the state of its burden to prove that he was guilty of all elements of the crime beyond a reasonable doubt. We disagree.

The following additional facts are relevant to this claim. On May 31, 2006, the defendant, who was represented by counsel, pleaded guilty to murder in violation of § 53a-54a and was sentenced to thirty years in prison on August 23, 2006. On August 15, 2012, the defendant filed a petition for a writ of habeas corpus alleging, inter alia, that he was denied the effective assistance of counsel and was not guilty of murder.[4]

During the pretrial proceedings of the present case, the defendant filed a "motion to introduce evidence undermining judgment or for stay of proceedings." The defendant sought to introduce evidence during the guilt phase of the capital felony trial to demonstrate that in

2006 he was guilty only of manslaughter because he lacked the specific intent to commit murder. He also sought to demonstrate that he was deprived of effective assistance of counsel when his attorney failed to investigate facts related to the prior murder charge, and, thus, that he did not knowingly and voluntarily plead guilty. The defendant also asked the court to delay the trial until the petition for a writ of habeas corpus was decided if the court did not grant the motion to undermine the prior conviction. The court conducted an evidentiary hearing on the motion.

The court heard testimony from the defendant's 2006 trial counsel, Glenn Conway, and reviewed the 2006 plea and sentencing transcripts. The plea transcript revealed that the state read into the record that the defendant was accused of killing David Gerald on July 21, 2005, in New Haven. Gerald sought to obtain narcotics from the defendant and the defendant told him to leave. Gerald struck the defendant, and the defendant chased him into an alley. The defendant fired two gunshots at Gerald and saw him collapse onto the street. A witness, Gary Williams, told New Haven police that he heard the defendant say that he had shot Gerald and hoped he killed him. The defendant acknowledged that the facts the state read into the record were true, and the court accepted his guilty plea.

At the evidentiary hearing in the present case, the defendant sought to call Michael Rollins, who was present when the defendant shot Gerald. The defendant proffered that Rollins would testify that the defendant never said that he hoped he had killed Gerald, but Rollins could not be located. The defendant sought instead to have Mark Masse, the investigator who interviewed Rollins, testify about Rollins' statement. The court ruled that this was inadmissible hearsay. Conway testified that he advised the defendant to plead guilty because the defendant, even if he was able to prove that he was guilty only of manslaughter with a firearm, likely faced a lengthier sentence than he would under the plea offer. Conway did not interview Williams or Rollins. The defendant called Attorney J. Patten Brown to testify that Conway had rendered ineffective assistance of counsel.

On November 17, 2012, prior to the commencement of the capital felony trial, the court issued its memorandum of decision denying the motion to present evidence. In its memorandum of decision, the court noted that the habeas court is the usual forum for collaterally attacking a prior conviction. See *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 412–13, 589 A.2d 1214 (1991). The court recognized, however, that notwithstanding the general rule precluding collateral attacks on prior convictions except in habeas proceedings, a conviction obtained in violation of constitutional rights cannot be used to enhance punishment for a subsequent conviction. See *Burgett* v. *Texas*, 389 U.S.

109, 114–15, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967)."

The court determined that the defendant had failed to demonstrate that the prior conviction was constitutionally invalid on its face. The record revealed that the defendant was represented by counsel. It also revealed that prior to pleading guilty, "the defendant was aware of the elements of the crime with which he was charged, his right to plead not guilty, his right to have a trial before a judge or jury, his right to have an attorney assist him at trial, and his right against self-incrimination." Because the defendant was aware of the charge and his rights, the record indicated that he knowingly and voluntarily pleaded guilty to the 2005 murder charge. See *State* v. *Wright*, 198 Conn. 273, 283–84, 502 A.2d 911 (1986). The court concluded that the defendant failed to establish a clear constitutional violation in his prior conviction. It ruled that during the guilt phase of the capital felony trial, the defendant would not be allowed to attempt to undermine his prior conviction by presenting evidence to the jury that he lacked the specific intent to commit intentional murder in 2005. The court also concluded that the defendant's assertion regarding the ineffective assistance of counsel did not permit him to attack the validity of the prior conviction during the guilt phase of the capital felony trial. The court stated that the habeas court would be the appropriate forum to determine whether the defendant's counsel was ineffective regarding the 2005 murder charge, and regardless, found that the defendant did not meet his burden under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to establish that his counsel had rendered ineffective assistance.

Prior to analyzing the defendant's claim on appeal, we set forth the applicable standard of review and legal principles. "We review a trial court's evidentiary ruling for abuse of discretion. . . . In a criminal case, [w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense . . . . Although exclusionary rules of evidence should not be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . The trial court retains the power to rule on the admissibility of evidence pursuant to traditional evidentiary standards." (Citations omitted; internal quotation marks omitted.) *State* v. *Romanko*, 313 Conn. 140, 148, 96 A.3d 518 (2014).

"A person is guilty of a capital felony who is convicted of . . . (3) murder committed by one who has previously been convicted of intentional murder . . . ." General Statutes (Rev. to 2009) § 53a-54b. "A guilty plea is itself a conviction . . . ." (Citations omitted; internal

quotation marks omitted.) *State* v. *Domian*, 235 Conn. 679, 686, 668 A.2d 1333 (1996), citing *Boykin* v. *Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "[T]he structure of the capital felony statute . . . makes the former conviction an essential element of the crime charged. . . . The purpose of § 53a-54b (3), however . . . is not to define a new type of crime, but rather to enhance the sentence for an activity that is already classified as a crime." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 234 Conn. 324, 339, 662 A.2d 1199 (1995).[5]

"Collateral attacks on judgments are not favored. Every presumption favors the jurisdiction of the court and the regularity of its processes." *State* v. *Wright*, supra, 198 Conn. 283. Nonetheless, "a conviction which has been procured in violation of constitutional rights cannot be used to increase the punishment which would ordinarily be permissible." *State* v. *Orsini*, 187 Conn. 264, 278, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982). The United States Supreme Court has determined that a defendant has a constitutional right to collaterally attack a prior conviction during a federal sentencing proceeding only if the conviction was obtained in violation of the defendant's right to counsel under *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 733 (1963). See *Custis* v. *United States*, 511 U.S. 485, 487, 495–97, 114 S. Ct. 1732, 128 L. Ed. 2d 517 (1994). The court noted that a violation of a defendant's right to counsel would be apparent in the judgment of conviction, and limiting collateral attacks to *Gideon* violations would facilitate judicial economy and promote the finality of judgments. Id., 496–97. Courts have extended the rationale in *Custis* to preclude collateral attacks in cases where the prior conviction serves as an element of the crime charged. See, e.g., *United States* v. *Gutierrez-Cervantez*, 132 F.3d 460, 462 (9th Cir. 1997), cert. denied, 522 U.S. 1083, 118 S. Ct. 869, 139 L. Ed. 2d 766 (1998); *State* v. *Johnson*, 38 A.3d 1270, 1278 (Me. 2012). Prior to *Custis*, our Supreme Court recognized that "[i]n those cases where the use of an earlier conviction has been prohibited, there has been some indication in the record, e.g., the absence of a notation of the appearance of counsel, which raised a presumption that a constitutional right had been violated. *Burgett* v. *Texas*, [supra, 389 U.S. 114–15]. . . . [O]ur review of claims not seasonably brought to the attention of the trial court is limited, even when constitutional considerations are involved, to those instances where the record . . . demonstrates a deprivation of a fundamental constitutional right." *State* v. *Orsini*, supra, 279–80.

The defendant's claim is an evidentiary claim disguised as one of constitutional magnitude, as he failed to demonstrate to the trial court a constitutional invalidity in his prior conviction. The court determined that the defendant was represented by counsel on the prior

conviction, which, in the context of *Custis*, is all that was required under the federal constitution. The court went beyond the narrow rule in *Custis* and afforded the defendant an evidentiary hearing to establish the invalidity of his prior conviction.[6] After hearing evidence and reviewing the transcript of the guilty plea, the court determined that the defendant knowingly and voluntarily pleaded guilty and received effective assistance of counsel. The constitutional validity of a prior conviction is a question of law; *United States* v. *Gutierrez-Cervantez*, supra, 132 F.3d 462; which is not in the province of the jury to decide.[7] See, e.g., *State* v. *Mosback*, 159 Conn. App. 137, 160, 121 A.3d 759 (2015).

The issue, then, is whether the court abused its discretion in precluding the defendant from presenting the evidence to undermine his prior conviction. We conclude that it did not. The evidence that the defendant sought to present was not relevant to rebut the evidence the state presented to prove beyond a reasonable doubt that he previously had been convicted of intentional murder. The defendant's claim that the court relieved the state of its burden to prove this element beyond a reasonable doubt misconstrues what the state was required to prove under the capital felony statute. Section 53a-54b (3) requires that the state prove that the defendant previously had been convicted of intentional murder. This does not mean that the defendant, after failing to demonstrate that his guilty plea was constitutionally invalid as a matter of law, was entitled to relitigate the facts and circumstances of the prior conviction by essentially having a habeas trial before the jury. The defendant's claim therefore fails.

## II

The defendant's second claim is that the court erred in refusing to instruct the jury on the affirmative defense of extreme emotional disturbance prior to its deliberation on the murder charge. We disagree.

"The affirmative defense of extreme emotional disturbance . . . is authorized by § 53a-54a. Proof of this defense by a preponderance of the evidence . . . entitles the defendant to a conviction of manslaughter in the first degree, instead of a conviction of murder. . . . Section 53a-54a describes the two elements of [the affirmative defense of extreme emotional disturbance]: (1) the defendant committed the offense under the influence of extreme emotional disturbance; and (2) there was a reasonable explanation or excuse for the defendant's extreme emotional disturbance." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Person*, 236 Conn. 342, 351, 673 A.2d 463 (1996). The reasonableness of the defendant's actions is "determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ." General Statutes § 53a-54a (a). "[E]xtreme emotional disturbance

. . . mean[s] that (a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the Penal Code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings . . . .” (Internal quotation marks omitted.) *State* v. *Person*, supra, 351 n.15. “Consideration is given to whether the intensity of these feelings was such that [the defendant’s] usual intellectual controls failed and the normal rational thinking for that individual no longer prevailed at the time of the act.” *State* v. *Elliott*, 177 Conn. 1, 10, 411 A.2d 9 (1979).

“In determining whether the trial court improperly refused a request to charge, [w]e . . . review the evidence presented at trial in the light most favorable to supporting the . . . proposed charge. . . . A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . If, however, the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury.” *State* v. *Arroyo*, 284 Conn. 597, 607–608, 935 A.2d 975 (2007). “[A] defendant is entitled to a requested instruction on the affirmative defense of extreme emotional disturbance only if there is sufficient evidence for a rational juror to find that all the elements of the defense are established by a preponderance of the evidence.” *State* v. *Person*, supra, 236 Conn. 353.

The following facts are relevant to this claim. During the portion of the trial on the murder charge, the jury heard testimony that the defendant admitted to numerous correction officers and Vining that he had killed the victim. Vining read into evidence the defendant’s written confession. The defendant noted that the statement was made voluntarily after he had been apprised of his rights. In his statement, the defendant stated that he was annoyed with the victim, who was “stressing [him] out, talking about his problems.” The defendant wrote: “I had it planned in my mind that if he kept on stressing me out when he got back [from court that afternoon], I was going to fight him. I knew that [the victim] had diabetes and I knew he would tire before me. I figured that he would eventually go down, and even if he didn’t, I had a razor.” The defendant stated that he was angry that the victim, upon returning from court, was wearing only one pair of boxer shorts and that he could see the victim’s penis. The defendant wrote that he always wore two pairs of boxer shorts and thought that it was improper for a person to wear only one pair when sharing a cell with someone.

The defendant described how he snuck up behind the victim, attacked him, and rendered him uncon-

scious. He stated: "I then went to the door of my cell and looked at the camera and smiled at the camera. I then put a piece of bedsheet up on the window." The defendant stated that he initially wanted to cut the victim's face, but upon realizing that the victim had a lot of facial hair, he "decided to make it simple and just strangle him instead." The defendant described tying the victim up and strangling him. At one point the victim regained consciousness. The defendant put a towel in his mouth to quiet him and continued to strangle him. The defendant "put [the victim's] body on his bunk to try to get an extra dinner tray." He carved his nickname "Guala" into the victim's chest and "put King in front of it to send a message that this was my body and I was changing [gang] affiliations."

He reiterated: "This wasn't a gang hit. No one told me to do this. I did this on my own. I made up my mind when he went to court that morning that I was going to hit him, tie him up, cut his face, and tell the guards to get him out of my cell. I only decided to kill him after I noticed that his face was full of hair and it wasn't going to cut." The jury also heard testimony from Latulippe, who was the first correction officer to find the victim in the cell. He testified that the defendant appeared calm when the officers removed him from the cell prior to attending to the victim.

After the victim was removed from the cell, the defendant was placed in the medical housing unit for observation. He was given a safety gown and blanket as a precautionary measure, but there was no indication that the defendant was going to harm himself. In regard to being held in the medical housing unit and the precautionary measures taken, the defendant asked Williams, "when did a homicide turn into a suicide?"

On the charge of murder in violation of § 53a-54a, the defendant sought to have the court give a supplemental instruction to the jury on the affirmative defense of extreme emotional disturbance. The defendant stated in his supplemental request to charge that the request on the affirmative defense was triggered by the testimony of the last witness in the state's case-in-chief, correction Officer Andre Cwalina. Cwalina testified that the defendant was "happy, excited, [and showed] no remorse" when discussing his attack on the victim. Cwalina testified that the defendant told him that after the killing he "felt like a lion at the zoo. That he liked the feeling he got afterward. He said [he was] going to do it again."

The court declined to give the requested jury instruction, noting that "the only evidence we seem to find looks to be that—before the crime or during the crime that's alleged here, was that the victim was annoying, bothered [the defendant], telling him stories about his family, complaining about his inability to see his son and walking around the cell in just one pair of boxers,

not two."

On the basis of our review of the record, we conclude that the court did not err in determining that there was insufficient evidence for a rational juror to find that the defendant had established the affirmative defense of extreme emotional disturbance by a preponderance of the evidence. In construing the evidence in the light most favorable to giving the charge, there was evidence that at the time of the killing, the defendant was angry that the victim complained to him about his legal and family problems, and wore only one pair of boxer shorts in the cell they shared. This amounts to nothing more than "mere unhappiness or annoyance."

Furthermore, there was no showing that the defendant's self-control and reason were overcome by extreme emotion; in fact, the evidence, even when viewed in the light most favorable to giving the charge, suggests the opposite, given the defendant's calculated, cruel and cold-blooded words and actions. The defendant's statement demonstrates that he planned to attack the victim and reasoned through each step in this vicious killing. He considered the effect the victim's diabetes might have on his ability to defend against the attack, and he stashed a razor in case the victim tried to fight back. The defendant covered the cell window so that the correction officers would not be able to see him attacking the victim and intervene. The defendant, in his own words, made the decision to kill the victim not because he was overcome by extreme emotion, but because the victim had too much facial hair for the defendant to cut the victim's face with his razor.[8] His statement demonstrated that he maintained his ability to reason. He used the victim's murder as an opportunity to show his desire to change gang affiliations and hoped to use the murder to obtain an extra meal prior to the victim's body being removed from his cell. This is in addition to the defendant's exhibiting consciousness of guilt by telling several correction officers and Vining that he killed the victim. Even when viewed in the light most favorable to giving the charge, the evidence demonstrates that he carefully and coolly planned the attack on the victim, and his self-control and ability to reason were not overcome by extreme emotion. "[E]vidence demonstrating a defendant's high degree of self-control or the planned and deliberate character of the underlying attack, as well as any postcrime conduct suggesting that the defendant was in full command of his or her faculties and had consciousness of guilt, is entirely inconsistent with an extreme emotional disturbance defense . . . ."[9] (Citation omitted; internal quotation marks omitted.) *People* v. *King*, 124 App. Div. 3d 1064, 1066, 1 N.Y.S.3d 569, leave to appeal denied, 25 N.Y.3d 1073, 34 N.E.3d 376, 12 N.Y.S.3d 625 (2015). The court therefore properly declined to give the jury an instruction on extreme emotional disturbance.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The title of § 53a-54b has been amended and is now "murder with special circumstances." Public Acts 2012, No. 12-5, § 1. We refer in this opinion, however, to the revision of § 53a-54b that was in effect at the time of the events at issue.

[2] The court vacated the defendant's murder conviction pursuant to *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013). The court noted that the conviction would be reinstated if the capital felony conviction was reversed on appeal, and, if so, the defendant would serve a sixty year sentence consecutive to the thirty year sentence on the 2006 murder conviction.

[3] The defendant's claim is based exclusively on the United States constitution. He therefore does not seek relief under the Connecticut constitution. See *State* v. *Reid*, 254 Conn. 540, 553 n.6, 757 A.2d 482 (2000).

[4] The record does not contain information about the status of this habeas petition.

[5] We decline to address the defendant's claim that our Supreme Court's interpretation of § 53a-54b in *Jones* was incorrect. "As an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it . . . ." *State* v. *Smith*, 107 Conn. App. 666, 684, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). The defendant's argument is encapsulated by Justice Borden's concurring and dissenting opinion in *Jones*. See *State* v. *Jones*, supra, 234 Conn. 364–68 (*Borden, J.*, concurring and dissenting).

[6] The defendant cites to several cases where courts have allowed for collateral attacks beyond the violation of the right to counsel and asserts that he was entitled to present the evidence at issue because of the heightened requirement for reliability in death penalty cases. This claim fails because the defendant had the opportunity to challenge his prior conviction in an evidentiary hearing prior to trial and still failed to meet his burden in demonstrating that it was constitutionally invalid. Furthermore, none of the cases the defendant cites supports his assertion that he was entitled to collaterally attack his prior conviction before a jury.

[7] The defendant's corollary argument that he was entitled to have the jury consider the alleged failure of his 2006 trial counsel to investigate mitigating evidence and its effect on the reliability of his guilty plea fails for the same reason. It is not within the province of the jury to decide whether a defendant's counsel has been effective. See, e.g., *State* v. *Parrott*, 262 Conn. 276, 285–86, 811 A.2d 705 (2003) (stating that claims of ineffective assistance of counsel are almost without exception determined by habeas court, and in rare instance such claim is reviewed on direct appeal, it is when claim is question of law with adequate record for review). The court did not abuse its discretion in refusing to permit the jury to consider the evidence about the effectiveness of the defendant's trial counsel.

[8] The defendant cites that in *State* v. *Person*, supra, 236 Conn. 344–45, an instruction on the affirmative defense was warranted even though the defendant expressly disavowed being under the influence of an extreme emotional disturbance. *Person* is distinguishable because there was circumstantial evidence supporting the affirmative defense. For example, in that case, one witness testified that the defendant appeared " 'out of it.' " Id., 356. A police officer testified that the defendant was "was very emotional. He was crying and repeating over and over, 'just lock me up, just lock me up.' " Id. In the present case there is no such circumstantial evidence, even when viewed in the light most favorable to the defendant, that supports the giving of an instruction on extreme emotional disturbance. Furthermore, in *Person*, the defense presented lay witness testimony in support of the defendant's claim that he acted under an extreme emotional disturbance. In the present case, the defendant relied solely on evidence produced during the state's case-in-chief.

[9] The defendant argues that the jury should have been allowed to consider that he acted under an extreme emotional disturbance due to his hatred of "snitches, rapists, and homos[exuals]." Correction Officer Ana Claudio testified that the defendant made that statement one week after the killing. The defendant stated that he refused to answer Vining's questions about whether he was afraid of the victim and why he was bothered by the victim's having worn only one pair of boxer shorts. The defendant also asserts that the jury could infer that he acted under an extreme emotional disturbance because Blais testified that the defendant had a distant stare after the killing, and Vining and several correction officers testified that the defendant was

laughing and making jokes after the killing. Even when construing this evidence in the light most favorable to giving the charge, it does not change our analysis that the defendant failed to sufficiently establish that a rational juror could conclude by a preponderance of the evidence that he was under the influence of an extreme emotional disturbance that caused the loss of his self-control at the time he killed the victim.

---