STATE OF CONNECTICUT *v.* RONALD O. SIMMAT

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued April 9—decision released May 12, 1981

*Lawrence C. Klaczak,* public defender, for the appellant (defendant).

*Donald B. Caldwell,* state's attorney, with whom, on the brief, was *Peter J. Ponziani,* deputy assistant state's attorney, for the appellee (state).

PETERS, J.  This case challenges the constitutionality of the statute that categorizes the failure of a prisoner to return from an authorized furlough as the comission of the crime of escape in the first degree, a class C felony.  The defendant, Ronald O.

Simmat, was charged by information with the crime of escape in violation of General Statutes § 53a-169 (a) (3). He interposed a number of motions which were denied, and thereafter, upon waiver of his right to a jury trial, he was tried to, and convicted by, the court. The appeal asks us to review not only the constitutional claim but also the trial court's denial of the defendant's motions for discovery and for a delay in his trial.

The facts are undisputed. In 1962, the defendant was sentenced to a term of life imprisonment for the crime of murder in the second degree. Thereafter, until March 22, 1975, he was confined either at the state prison, Wethersfield, or the state correctional institution, Somers. In early March of 1975, the defendant requested a furlough for March 22, 1975, from 8 a.m. to 6 p.m., the day to be spent in the custody of his father. The defendant left the correctional institution with his father on the morning of the 22nd of March and did not return. He was arrested and extradited to Connecticut from New Mexico on February 15, 1979. He was charged with the crime of escape on the following day.

The defendant's constitutional claim is that the escape statute, General Statutes § 53a-169, violates the equal protection clause and the due process clause of the fourteenth amendment of the United States constitution. The defendant argues that it is irrational, unjust and arbitrary to provide the same penalty for a prisoner who fails to return from furlough as for a prisoner who breaks out of a correctional institution itself. The more rational analogy, the defendant maintains, is to compare a failure to return from furlough with a failure to comply with the conditions of parole. A parole

violator can be punished only by being required to serve the remainder of his originally imposed sentence in a correctional institution; General Statutes § 54-128 (a); the defendant argues that an escapee from furlough should receive no stiffer penalty. The trial court fully considered this constitutional claim and found it unpersuasive. *State* v. *Simmat,* 36 Conn. Sup. 71, 411 A.2d 595 (1979). We agree.

The scope of the defendant's argument under the equal protection clause is considerably narrowed by his concession that the right to a furlough, granted by General Statutes § 18-101a, is a matter of legislative grace, rather than a fundamental right invoking a strict standard of review. The appropriate test, therefore, by which to determine whether the classification contained in the escape statute, § 53a-169, is constitutional is to inquire whether the legislative classification is founded upon a rational basis. *McGinnis* v. *Royster,* 410 U.S. 263, 270, 93 S. Ct. 1055, 35 L. Ed. 2d 282 (1973); *Dandridge* v. *Williams,* 397 U.S. 471, 484, 485, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970); *F. S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415, 40 S. Ct. 560, 64 L. Ed. 989 (1920); *Frazier* v. *Manson,* 176 Conn. 638, 645–47, 410 A.2d 475 (1979); *Liistro* v. *Robinson,* 170 Conn. 116, 124, 365 A.2d 109 (1976); *Laden* v. *Warden,* 169 Conn. 540, 542, 363 A.2d 1063 (1975); *State* v. *Delgado,* 161 Conn. 536, 549–51, 290 A.2d 338 (1971); see Tribe, American Constitutional Law §§ 16.3, 16.4 (1978). In examining the rationality of a legislative classification, we are bound to defer to the judgment of the legislature unless the classification created by the statute is clearly irrational and unreasonable. *State* v. *Rao,* 171 Conn. 600, 603, 370 A.2d 1310 (1976); *State* v.

*Zazzaro,* 128 Conn. 160, 166, 20 A.2d 737 (1941). Anyone contesting a statute's constitutionality on this ground bears a heavy burden of persuasion.

The decision of the legislature to treat a failure to return from furlough as an escape has a rational basis. The legislature was entitled to view the furlough program as a significant rehabilitative device that can be effective only if severe sanctions attend violations of furlough. That furlough violators are not likely to be violent in their escape, and are hence less likely than the ordinary escapee to provoke violence by corrections officers, is a matter that the legislature could rationally view as properly committed to the consideration of the trial court upon sentencing. Legislative distinctions between those who violate the conditions of a furlough and those who violate the conditions of a parole are as permissible, constitutionally, as those between parole violators and probation violators, which we have previously found to be constitutional. *Liistro* v. *Robinson,* supra.

The defendant's argument under the due process clause does not differ substantively from his argument that the escape statute deprives him of his right to equal protection. The defendant recognizes that we have, in *State* v. *Kyles,* 169 Conn. 438, 442–43, 363 A.2d 97 (1975), held that General Statutes § 53a-169 comports with the requirements of due process. The legislature could rationally consider a furlough as only a temporary geographical enlargement of the inmate's custody, and hence treat a failure to return from furlough as a violation of custody akin to a direct escape over prison walls. Whether modern principles of penology

counsel a different strategy with regard to furloughs is a matter to be determined by the legislature, not by the courts.

In addition to his constitutional claim, the defendant claims that the trial court committed error in its rulings on two pretrial motions. One of these motions was a request for discovery; another was a request that the state trial be delayed because of pending proceedings in the federal court. Neither ruling was in error.

The defendant's discovery motion was denied insofar as it sought information concerning the handling of inmates who failed to return from furlough prior to the enactment of General Statutes § 53a-169 (a) (3) making such behavior a criminal offense. The rules of discovery in criminal cases give the defendant access, inter alia, to "[a]dequately identified books, tangible objects, papers, photographs, or documents which are within the possession, custody, or control of any state agency, and which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial." Practice Book § 741 (3). We are not persuaded that the treatment of inmates before enactment of a statute making certain conduct criminal is material or relevant to the criminality of their conduct after the statute has become effective. The legislature has the right prospectively to change the sanctions that attach to behavior that it has characterized as criminal. See *Frazier* v. *Manson,* supra. Nor are we persuaded that the defendant has shown good cause why disclosure was required in this case in the interests of justice. Practice Book § 745.

The defendant's motion for a delay of his trial was premised upon three then pending proceedings in the United States District Court. In *Simmat* v. *Caldwell*, the defendant sued to impose responsibility for his escape on the warden of the state correctional institution where he has been incarcerated. In *Simmat* v. *Speziale*, the defendant asserted a constitutional flaw in the rotation of state judges insofar as such rotation assigned different state court judges to his pretrial motions. In *Simmat* v. *Manson*, the defendant claimed a violation of due process arising out of denial of access to the prison law library. As of the date of the state court proceedings, the federal cases had been scheduled for a pretrial conference, but none had been set down for trial. The state case had then been pending for more than a year.

Although we do not have a firm ruling on the likelihood of immediate action on the pending cases in the federal court, we may take notice of the federal cases that have counseled abstention or stays by the federal courts when a state case is pending. In the interests of federalism, the Supreme Court of the United States has repeatedly ordered the lower federal courts, over which it exercises supervision, to stay their proceedings to enable appropriate state court litigation to take place. See *Younger* v. *Harris,* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); cf. *Steffel* v. *Thompson,* 415 U.S. 452, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974); and see, Tribe, supra, §§ 3-40, 3-41; Field, "Abstention in Constitutional Cases," 122 U. Pa. L. Rev. 1071, 1163–87 (1974). It is therefore not unreasonable to suppose that the District Court would have declined to proceed until this case was tried in the Superior Court.

In determining whether the trial court erred in proceeding with the trial, our review is, as the defendant concedes, limited to a determination of whether the trial court abused its discretion. *State v. Hoffler*, 174 Conn. 452, 462, 389 A.2d 1257 (1978); *State v. Jeustiniano*, 172 Conn. 275, 284, 374 A.2d 209 (1977); *State v. Olds*, 171 Conn. 395, 401–402, 370 A.2d 969 (1976); *State v. Bethea*, 167 Conn. 80, 83–84, 355 A.2d 6 (1974); *State v. Manning*, 162 Conn. 112, 121, 291 A.2d 750 (1971). Nothing in the facts before us is sufficient to support the conclusion that there has been an abuse of discretion.

There is no error.

In this opinion the other judges concurred.