STATE OF CONNECTICUT *v.* WILLIAM DUPREE
(12222)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued April 4—decision released July 16, 1985

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Mary M. Galvin,* assistant state's attorney, and *Eric Mogilnicki,* legal intern, for the appellant-cross appellee (state).

*Peter A. Kelly,* for the appellee-cross appellant (defendant).

CALLAHAN, J. This is an appeal by the state, with the permission of the trial court, from the judgment sen-

tencing the defendant, after conviction by a jury of two counts of arson murder in violation of General Statutes § 53a-54d, to a term of life imprisonment suspended after twenty-five years with probation for five years. The counts arose from the deaths of the defendant's former wife, Laurel Dupree, and her seven year old son, David Neal, in a fire at 414 Winthrop Avenue, New Haven, in the early morning hours of September 24, 1981. The state claims that the trial court erred in refusing to sentence the defendant in accordance with the mandate of General Statutes § 53a-54d. The defendant has filed a cross appeal claiming the trial court erred (1) in ruling that the arson murder statute is constitutional and (2) in denying the defendant's motion to suppress an out-of-court identification of the defendant by a state's witness. We find no error in either the appeal or the cross appeal.

I

We will first consider the state's appeal. The trial court, in sentencing the defendant, merged the two counts of arson murder into one count and thereafter imposed one sentence, a term of life imprisonment, to be suspended after the defendant served twenty-five years, with a period of probation of five years. The merger of the counts is not an issue in this appeal. The state, however, challenges the legality of the trial court's suspension, after twenty-five years, of the sentence of life imprisonment imposed on the defendant. It is from the judgment suspending a portion of the defendant's sentence that the state appeals.

The arson murder statute, General Statutes § 53a-54d, provides: "ARSON MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes,

any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole." The state claims that the arson murder statute requires the trial court to impose a mandatory sentence of life imprisonment on the defendant without eligibility for parole and that the trial court was prohibited from suspending any portion of that sentence.

If this crime had been committed prior to July 1, 1981, the trial court could not have suspended any portion of the life sentence mandated by the arson murder statute. Before that date, lengthy felony sentences were required to be indeterminate, necessitating the imposition of a minimum and a maximum sentence. General Statutes § 53a-35 (a).[1] A trial court could not suspend a portion of an indeterminate sentence since such suspension would have been contrary to the intent and purpose of indeterminate sentencing.[2] The provision of General Statutes § 53a-54d which requires that one convicted of arson murder be "punished by life imprisonment and shall not be eligible for parole" eliminated both the possibility of parole and the necessity of imposing a minimum sentence, the imposition of which would have been a futile gesture since its only purpose was to determine a date for parole eligibility.

---

[1] "[General Statutes] Sec. 53a-35. IMPRISONMENT FOR ANY FELONY COMMITTED PRIOR TO JULY 1, 1981: INDETERMINATE SENTENCES; MAXIMUM AND MINIMUM TERMS. (a) For any felony committed prior to July 1, 1981, the sentence of imprisonment shall be an indeterminate sentence, except as provided in subsection (d). When such a sentence is imposed the court shall impose a maximum term in accordance with the provisions of subsection (b) and the minimum term shall be as provided in subsection (c) or (d). . . ."

[2] General Statutes § 53a-28 (b) (5) and (6) authorized only the suspension of an entire indeterminate sentence or definite sentence or a portion of a definite sentence. To hold that it authorized the suspension of a portion of an indeterminate sentence would conflict with General Statutes § 54-125 which vested the authority and discretion to release *any* person *confined* under an indeterminate sentence with the board of parole. *Michaels* v. *York*, 31 Conn. Sup. 350, 352, 330 A.2d 466 (1974).

General Statutes § 54-125. Therefore, in the context of an indeterminate sentencing scheme, the arson murder statute required the imposition of a mandatory life sentence to be served in its entirety.

In the 1980 legislative session, however, the legislature passed what is now General Statutes § 53a-35a,[3] which became effective on July 1, 1981, prior to the date of this crime. This statute instituted definite sentencing and effectively eliminated parole in Connecticut. There is a presumption that the legislature knew all existing statutes and intended the effect which its action would have. *Farricielli* v. *Personnel Appeal Board,* 186 Conn. 198, 205, 440 A.2d 286 (1982); *Beccia* v. *Waterbury,* 185 Conn. 445, 459, 441 A.2d 131 (1981). The effect of General Statutes § 53a-35a is to put the arson murder statute in the context of a definite sentencing scheme and to render the phrase "shall not be eligible for parole" in the statute meaningless. There is no reason to believe, however, that the legislature

---

[3] "[General Statutes] Sec. 53a-35a. IMPRISONMENT FOR ANY FELONY COMMITTED ON OR AFTER JULY 1, 1981: DEFINITE SENTENCES; TERMS AUTHORIZED. For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows: (1) For a capital felony, a term of life unless a sentence of death is imposed in accordance with section 53a-46a; (2) for the class A felony of murder, a term not less than twenty-five years nor more than life; (3) for a class A felony other than murder, a term not less than ten years nor more than twenty-five years; (4) for a class B felony, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-55a, 53a-59 (a) (1), 53a-59a, 53a-70a, 53a-94a, 53a-101 (a) (1) or 53a-134 (a) (2), the term shall be not less than five years nor more than twenty years; (5) for a class C felony, a term not less than one year nor more than ten years, except that for a conviction under section 53a-56a, the term shall be not less than three years nor more than ten years; (6) for a class D felony, a term not less than one year nor more than five years, except that for a conviction under section 53a-60b, the term shall be not less than two years nor more than five years, and for a conviction under section 53a-60c, the term shall be not less than three years nor more than five years; (7) for an unclassified felony, a term in accordance with the sentence specified in the section of the general statutes that defines the crime."

intended the entire statute to be without meaning or effect. This situation is analogous to that in which a portion of a statute is declared unconstitutional. If the statute is severable, the portion of the statute which is valid remains operative. *State ex rel. Bennett* v. *Glynn,* 154 Conn. 237, 243, 224 A.2d 711 (1966). Therefore, General Statutes § 53a-54d remains effective to make arson murder a crime and to require anyone convicted of that offense to receive a life sentence. Although the legislature may have originally intended to require anyone convicted of arson murder to serve a life sentence in its entirety, the court is bound by what the legislature has in fact said and not by what it meant to say. *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984); *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979). Further, the court is required to construe criminal statutes strictly against the state and in favor of the accused. *State* v. *DeMartin,* 171 Conn. 524, 544, 370 A.2d 1038 (1976); *State* v. *Cataudella,* 159 Conn. 544, 555, 271 A.2d 99 (1970). It is also a rule of statutory construction that unless there is ambiguity in the language of a statute, there is no occasion to look to the legislative intent. *In re Petition of State's Attorney, Cook County, Illinois,* 179 Conn. 102, 107, 425 A.2d 588 (1979).

There is no ambiguity in the language of the presently effective portion of the arson murder statute. It requires the trial court to impose a sentence of life imprisonment on the defendant. The trial court did in fact impose a sentence of life imprisonment. There is now nothing in the language of § 53a-54d, or in any other section of the General Statutes, which explicitly prohibits the trial court from suspending a portion of that sentence. Absent a statutory prohibition, a term of imprisonment with the execution of such sentence of imprisonment suspended after a period set by the

court and a period of probation is an authorized sentence. General Statutes § 53a-28 (b) (5).[4]

The state argues, however, that arson murder is another form of murder and that General Statutes § 53a-54a (c)[5] requires that all forms of murder, "unless

[4] "[General Statutes] Sec. 53a-28. AUTHORIZED SENTENCES. (a) Except as provided in chapter 368p, to the extent that such chapter is inconsistent herewith, every person convicted of an offense shall be sentenced in accordance with this title.

"(b) Except as provided in sections 53a-45, 53a-46a, 53a-54b and 53a-92, when a person is convicted of an offense, the court shall impose one of the following sentences: (1) A term of imprisonment; or (2) a sentence authorized by sections 18-65a or 18-73 or (3) a fine; or (4) a term of imprisonment and a fine; or (5) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a period of probation or a period of conditional discharge; or (6) a term of imprisonment, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a fine and a period of probation, or a period of conditional discharge; or (7) a fine and a sentence authorized by section 18-65 or 18-73; or (8) a sentence of unconditional discharge.

"(c) A sentence to a period of probation or conditional discharge in accordance with sections 53a-29 to 53a-34, inclusive, shall be deemed a revocable disposition, in that such sentence shall be tentative to the extent that it may be altered or revoked in accordance with said sections but for all other purposes it shall be deemed to be a final judgment of conviction."

[5] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

. . . a capital felony," be punished as a class A felony. It further argues that General Statutes § 53a-29 (a)[6] rules out probation, such as that imposed in this case, for a class A felony and that a suspended sentence, unless accompanied by a period of probation, is not an authorized sentence under General Statutes § 53a-28 (b) (5). Therefore, the state concludes that the trial court, by not imposing a life sentence to be served in its entirety, imposed an illegal sentence. We disagree.

The legislature chose to insert the penalty of life imprisonment, an expressly specified sentence, directly into the arson murder statute. That expressly specified sentence contained in General Statutes § 53a-54d removed the arson murder statute from the ambit of General Statutes § 53a-54a (c), which punishes murder as a class A felony, and placed it squarely within the definition of an unclassified felony in General Statutes § 53a-25.[7] There is no statutory provision which prohibits the suspension of a portion of a sentence of

---

[6] "[General Statutes] Sec. 53a-29. PROBATION AND CONDITIONAL DISCHARGE: CRITERIA; PERIODS. (a) The court may sentence a person to a period of probation upon conviction of any crime, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance, training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice. . . ."

[7] "[General Statutes] Sec. 53a-25. FELONY: DEFINITION, CLASSIFICATION, DESIGNATION. (a) Any offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony.

"(b) Felonies are classified for the purposes of sentence as follows: (1) Class A, (2) class B, (3) class C, (4) class D, (5) unclassified and (6) capital felonies for which the sentence of death may be imposed as provided in sections 53a-46a and 53a-54b.

"(c) The particular classification of each felony defined in this chapter is expressly designated in the section defining it. Any offense defined in any other section of the general statutes which, by virtue of any expressly specified sentence, is within the definition set forth in subsection (a) shall be deemed an unclassified felony."

imprisonment accompanied by a period of probation for an unclassified felony. The trial court, therefore, had the authority to impose the sentence which it did.

## II

The defendant's initial claim on his cross appeal is that General Statutes § 53a-54d violates his right to due process of law under the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. A party contesting a statute's constitutionality has a heavy burden to prove unconstitutionality beyond a reasonable doubt. *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *Adams* v. *Rubinow,* 157 Conn. 150, 152, 251 A.2d 49 (1968).

The defendant's claim appears to be that the statute, merely from proof of the underlying crime of arson, creates an irrebuttable presumption of intent to cause death, and that such intent is an element of the crime of arson murder. A statute which creates a presumption and shifts to the defendant the burden to disprove an element of the crime charged would be a violation of both the federal and state due process clauses. Due process requires that the state prove all the elements of the crime charged beyond a reasonable doubt. *Sandstrom* v. *Montana,* 442 U.S. 510, 520–24, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Little,* 194 Conn. 665, 671, 485 A.2d 913 (1984); *State* v. *Scielzo,* 190 Conn. 191, 196, 460 A.2d 951 (1983).

The defendant misconstrues the statute. Intent to cause death is not an element of the crime of arson murder. Arson murder has no mens rea requirement beyond that of an intention to commit the underlying crime of arson upon which the charge of arson murder is predicated. See *State* v. *Valeriano,* 191 Conn.

659, 662, 468 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984); *State v. Young,* 191 Conn. 636, 639–44, 469 A.2d 1189 (1983).

Since the statute does not shift the burden of proof as to an element of the crime, the trial court did not err in finding that General Statutes § 53a-54d does not violate the defendant's right to due process of law.

### III

The defendant next claims that the statute denies him equal protection of the law in violation of the federal and state constitutions. The defendant notes that while arson murder carries a mandatory life sentence, felony murder and murder do not. The defendant argues that there is nothing so qualitatively different about arson murder as compared to murder or felony murder that justifies a more severe punishment for arson murder. Therefore, the defendant claims the arson murder statute, which requires a life sentence on conviction, defies any scheme of rational classification and lays an unequal and heavier hand on those, including himself, convicted of what is essentially the same offense as murder or felony murder. We held earlier in this opinion that the trial court had the authority to suspend a portion of the defendant's sentence of life imprisonment. Nevertheless, since the defendant faces the possibility of serving his entire sentence if he violates the terms of his probation, his equal protection claim will be briefly addressed.

When legislation neither containing a suspect classification nor impinging on a fundamental right is challenged on equal protection grounds, the burden is on the complaining party to establish that the statutory distinction is without rational basis. *Miller* v. *Heffernan,* 173 Conn. 506, 509, 378 A.2d 572 (1977), appeal dismissed, 434 U.S. 1057, 98 S. Ct. 1226, 55 L. Ed. 2d 758 (1978).

The classification of crimes is for the legislature. *State v. Rao,* 171 Conn. 600, 603, 370 A.2d 1310 (1976). In examining the rationality of a legislative classification, we are bound to defer to the judgment of the legislature unless the classification is clearly irrational and unreasonable. *State v. Simmat,* 184 Conn. 222, 224–25, 439 A.2d 915 (1981). Murder and felony murder are obviously serious crimes but generally speaking have only a limited area of impact. Arson, on the other hand, has the potential for disaster not only to any intended victims but also to entire neighborhoods and multiple unintended victims. See Curtis, A Treatise on the Law of Arson (1936) § 3 (common law arson a crime against habitation interests); 4 Blackstone, Commentaries on the Laws of England, c. 16. We cannot say that the legislature acted irrationally in opting to punish more severely what it could reasonably perceive to be the greater danger to the community. The trial court did not err in finding that § 53a-54d does not violate the equal protection clauses of the federal and state constitutions.

## IV

The defendant further claims that the penalty provision of the arson murder statute constitutes cruel and unusual punishment and is therefore violative of the eighth amendment to the federal constitution and article first, § 8, of the Connecticut constitution. The defendant claims that the statute is an anomaly in our statutory scheme, because it requires a more severe sentence than that for the comparable crimes of murder or felony murder, and is therefore obviously disproportionate to the crime committed.

As indicated earlier in this opinion, the classification of crimes is a matter for the legislature. *State v. Rao,* supra, 603. Legislative prerogative, however, is not open-ended. The United States Supreme Court has held

that while reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishment for crimes, a criminal sentence must be proportionate to the crime for which the defendant has been convicted. *Solem* v. *Helm,* 463 U.S. 277, 288–90, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). The Supreme Court noted in *Solem* v. *Helm,* supra, however, that "outside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." Id. In *Solem,* the court held that a sentence to life imprisonment for what the court deemed "one of the most passive felonies a person could commit," was grossly disproportionate to the nature of the offense.[8] Id., citing *State* v. *Helm,* 287 N.W.2d 497, 501 (S.D. 1980) (Henderson, J., dissenting). We do not find that the defendant's sentence was grossly disproportionate to the nature of the offense involved in this case.

## V

The defendant's final claim is that the trial court erred in allowing into evidence testimony by a state's witness, Paul Swiderski, of his out-of-court identification of the defendant. On September 24, 1981, Swiderski, a sixteen year old attendant, was working at an all night filling station known as "Pitts." The station was located approximately 1.2 miles from 414 Winthrop Avenue, the scene of the fire. According to an expert witness for the state, the fire started at approximately 2 a.m. At about 3:30 a.m. Patrolman Richard Rohloff of the New Haven police department showed the witness a single "mug shot" of the defendant and

---

[8] The defendant, Helm, was charged with uttering a no account check for one hundred dollars and also with being an habitual offender. The court noted that although the charges were not trivial, neither involved violence or threat of violence to any person. *Solem* v. *Helm,* 463 U.S. 277, 296, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983).

inquired whether he had sold gasoline to the person depicted in the photograph. Swiderski identified the photo as that of a man to whom he had sold gas earlier that morning. He recalled that the man had pumped the gas into a plastic container.

The trial court conducted a hearing outside the presence of the jury on the issue of the admissibility of Swiderski's out-of-court identification. Subsequently the trial court found that the identification procedure was impermissibly and unnecessarily suggestive. It found, however, that in view of the totality of the circumstances the identification was reliable, and Swiderski was allowed to testify at trial to the out-of-court identification. *Neil* v. *Biggers,* 409 U.S. 188, 199–201, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *Manson* v. *Brathwaite,* 432 U.S. 98, 134, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

This court has reexamined the question of the overall reliability of the identification procedure used in this case. *State* v. *Gordon,* 185 Conn. 402, 416, 441 A.2d 119 (1981); see *State* v. *Doolittle,* 189 Conn. 183, 192, 455 A.2d 843 (1983). After a close examination of the record we see no reason to disturb the trial court's finding.

We find no error.

In this opinion the other judges concurred.