# STATE OF CONNECTICUT *v.* FREDERICK PAYNE
## (12993)

Lavery, Landau and Schaller, Js.

1

Argued September 14—decision released December 26, 1995

*John W. Watson*, assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21[1] and of misdemeanor coercion in violation of General Statutes § 53a-192.[2] On appeal, the defendant claims

---

[1] General Statutes § 53-21 provides in pertinent part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired . . . shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] General Statutes § 53a-192 provides in pertinent part: "(a) A person is guilty of coercion when he compels or induces another person to engage in conduct which such other person has a legal right to abstain from engaging

that the trial court (1) improperly denied his motions for judgment of acquittal and for judgment notwithstanding the verdict on the charge of risk of injury to a child because § 53-21, as applied to the facts of this case, is unconstitutionally vague and indefinite, (2) incorrectly instructed the jury on the elements of § 53-21, (3) improperly denied his motion for judgment of acquittal in which he claimed that there was insufficient evidence to support the convictions, and (4) abused its discretion in failing to issue a capias compelling the appearance of two defense witnesses and in excluding evidence of prior acts by the defendant offered to establish that the defendant had acted in conformity with them at the time of the crime. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On February 4, 1993, at 5 p.m., the defendant approached three boys, R, age eight, his brother A, age five, and their friend L, age ten, in a dark hallway of a vacant apartment building in a New Haven housing project. Standing in the doorway so as to prevent the boys from leaving, the defendant ordered the boys to urinate into a cup.[3] The defendant told R that he was going to kill him if he did not comply. After all three boys urinated, the defendant gave them $1 and allowed them to leave. R and A ran home crying and told their mother, T, what had occurred.

T and her sons approached Officers Brian Morris and John Dalton of the New Haven police department in

in . . . by means of instilling in such other person a fear that, if the demand is not complied with, the actor or another will: (1) Commit any criminal offense . . . .

"(c) Coercion is a class A misdemeanor except, if the threat is to commit a felony, coercion is a class D felony."

[3] As the result of a prior conviction, the defendant was under the supervision of a parole officer and subject to random urine testing for drugs and alcohol. The defendant approached the victims in order to obtain a clean urine sample to give as his own to his parole officer. He was also required to attend weekly meetings with a counselor.

the courtyard of the housing project. T informed the police officers of the incident and described the defendant. Morris and Dalton told T to return home and to wait for their telephone call. In an effort to locate the defendant, Morris and Dalton proceeded to a nearby parole office. Morris and Dalton described the defendant to a parole officer who stated that the defendant was currently in the building attending a drug and alcohol recovery meeting. Morris and Dalton then telephoned T and requested that she and her sons meet them there. At the probation office, R and A positively identified the defendant as the man who had forced them to urinate. The police arrested the defendant and, upon searching him, seized a small plastic bottle of urine they found hidden in the waistband of his underwear.

The jury returned verdicts of guilty of risk of injury, not guilty of felony coercion, and guilty of misdemeanor coercion as a lesser included offense. This appeal followed.

I

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal and for judgment notwithstanding the verdict pertaining to the charge of risk of injury to a child pursuant to § 53-21. He argues that the statute, as applied to him, is vague because neither the language of § 53-21 nor controlling judicial gloss afforded him fair warning that conduct posing a risk of injury solely to a child's mental health would violate the statute. We disagree.

"General Statutes § 53-21 proscribes 'two general types of behavior . . . "(1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare" and "(2) acts directly perpetrated on the person of the minor and injurious to [his] moral or physical well-being." ' . . . In both instances, the focus of the statute is on the behav-

ior of the defendant, not on the character, history or experience of the victim. See *State* v. *Pickering*, 180 Conn. 54, 63–65, 428 A.2d 322 (1980)." (Citations omitted.) *State* v. *Apostle*, 8 Conn. App. 216, 242, 512 A.2d 947 (1986).

Under the first prong, it is not necessary that a defendant touch any part of the victim's body. Rather, the creation of a prohibited situation is sufficient to breach the statute. *State* v. *Perruccio*, 192 Conn. 154, 159–60, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). Under the second prong, acts that are perpetrated directly on the body of a child are proscribed. *State* v. *Schriver*, 207 Conn. 456, 467, 542 A.2d 686 (1988).

The defendant in this case was charged pursuant to the first prong of § 53-21. At the state's request, the trial court instructed the jury that one element of risk of injury was that the defendant "created . . . a situation likely to be harmful to the victim's health or morals." The court then defined health as "a state of being hale, sound or whole in body, mind or soul, or well-being." On appeal, the defendant posits that the state's theory of liability based on impairment of mental health is precluded by our Supreme Court's decision in *State* v. *Schriver*, supra, 207 Conn. 456.

In *Schriver*, the defendant physically grabbed a fully clothed thirteen year old girl around the waist while uttering a sexual remark. Unlike the present case, the state prosecuted the defendant in *Schriver* under the second prong of § 53-21. The state charged that the defendant committed a prohibited act under either the "health" or "morals" clause of that prong. Id., 461. On appeal, the Supreme Court held that the statute was unconstitutionally vague because controlling judicial gloss required the actual touching of a victim's private parts for impairment of morals and instances of blatant

physical abuse for injuries to health. Id., 466. The court refused to conclude, as the state urged, "that the defendant's conduct was culpable because it created a cognizable risk of mental injury to the victim." Id.; see also *State* v. *Kulmac*, 230 Conn. 43, 72–73, 644 A.2d 887 (1994). *Schriver*, however, left open the question of whether the state could pursue a prosecution based solely on an impairment of mental health under the first prong of the statute.[4] *State* v. *Schriver*, supra, 207 Conn. 467. *Schriver*, therefore, does not control our decision in this case.

To resolve the defendant's claim that § 53-21 was vague as applied to him, we must decide whether conduct that is likely to impair the mental health of a victim is proscribed under the first prong of § 53-21. Specifically, we must determine whether the defendant was fairly warned that threatening the victims in a dark area of a vacant building in order to compel them to urinate into a cup was such prohibited conduct. *State* v. *Pickering*, supra, 180 Conn. 61.

"The constitutional injunction that is commonly referred to as the void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement. . . . The fair warning principle has firm roots in federal constitutional law. . . . The United States Supreme Court recently emphasized, however, that the more important

---

[4] The Supreme Court stated: "At the outset, we note that the defendant in this case was charged under the second part of § 53-21. To have violated the statute, then, the defendant had to have committed acts directly perpetrated on the person of a minor, whether the alleged impairment was mental or physical. Under different circumstances, the state might elect to prosecute under the first part of § 53-21, which proscribes the deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . . A defendant need not physically touch a minor in order to violate that provision of § 53-21." (Citations omitted; internal quotation marks omitted.) *State* v. *Schriver*, supra, 207 Conn. 467.

aspect of the vagueness doctrine is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement. . . . A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." (Citations omitted; internal quotation marks omitted.) *State* v. *Schriver*, supra, 207 Conn. 459–60.

"In order to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . . The constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties. . . . Under appropriate circumstances, the presence of a specific intent element in the offense may purge a potentially vague criminal statute of constitutional infirmity. . . . Furthermore, a facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards. . . . For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue." (Citations omitted; internal quotation marks omitted.) Id., 460–61. "A party contesting a statute's constitutionality has a heavy burden to prove unconstitutionality beyond a reasonable doubt." *State* v. *Dupree*, 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985).

The general purpose of § 53-21 is to protect the well-being of children. See *State* v. *Palangio*, 24 Conn. App. 300, 304, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991). The plain language of the first prong states that "[a]ny person who . . . causes . . . any

child . . . to be placed in a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired" will be guilty of risk of injury. The statute does not define the word "health," nor does it indicate whether health refers to physical health or mental health. The statute does, however, distinguish three alternative classes of potential injury: endangering life or limb, likely injury to health, and impairment of morals.

Operating, as we must, on the assumption that the statute is constitutional; *Eielson* v. *Parker*, 179 Conn. 552, 557, 427 A.2d 814 (1980); we look to the phrase "health is likely to be injured" to determine whether any inherent vagueness in that phrase prevented the defendant from ascertaining the meaning of the statute. *State* v. *Pickering*, supra, 180 Conn. 62. The rule of strict construction of criminal statutes does not authorize an interpretation that frustrates the intent of the legislature. *State* v. *Grant*, 33 Conn. App. 133, 140, 634 A.2d 1181 (1993).

First, we note that use of the phrase "its life or limb is endangered" indicates an obvious intent on the part of the legislature to protect children from the type of conduct that creates a risk of physical injury. See, e.g., *State* v. *George*, 37 Conn. App. 388, 656 A.2d 232 (1995) (defendant locked seventeen month old baby in car after police warned him not to do so); *State* v. *Jones*, 29 Conn. App. 683, 617 A.2d 918 (1992) (defendant engaged in high-speed automobile chase with child in vehicle). Similarly, use of the phrase "its morals likely to be impaired" indicates that the legislature intended to prohibit conduct that threatens the morality of children. See, e.g., *State* v. *Hauck*, 172 Conn. 140, 374 A.2d 150 (1976) (defendant took photographs of nude and semi-nude victim); *State* v. *Erzen*, 29 Conn. App. 591, 617 A.2d 177 (1992) (defendant lured two female children to secluded place where he exposed himself and mas-

turbated). Because these two phrases expressly provide protection to minors from physical and moral injury, we must assume that the legislature intended the phrase "its health is likely to be injured" to mean something different from physical or moral health in order to avoid redundancy. See *Hayes* v. *Travelers Indemnity Co.*, 26 Conn. App. 418, 420–21, 601 A.2d 555 (1992).

Health is defined as "the condition of an organism or one of its parts in which it performs its vital functions normally or properly: the state of being sound in body or mind . . . ." Webster's Third New International Dictionary. It is further defined as the "[s]tate of being hale, sound, or whole in body, mind or soul . . . ."[5] Black's Law Dictionary (6th Ed. 1990). Health, therefore, is the general, or total well-being of a person, and includes the separate and distinct concepts of mind and body. Common sense and ordinary understanding dictate that the soundness of body refers to physical health, and the soundness of mind, to psychological or mental health.

By adopting the separate phrase "its health is likely to be injured," after making express provisions addressing life, limb and morality, we must assume that a reasonable interpretation of the statute is that the legislature also intended to proscribe conduct injurious to mental health. See *State* v. *Uretek, Inc.*, 207 Conn. 706, 719, 543 A.2d 709 (1988). If the legislature did not intend to include mental health under the general term health, it would have limited the statute to the express provisions referring to physical and moral injury.

We conclude that conduct that creates a situation inimical to the mental health of a minor child violates

---

[5] The definition of health in Black's Law Dictionary was used verbatim by the trial court in its charge to the jury. The court used the model charge for risk of injury as set forth in D. Borden & L. Orland, 5 Connecticut Practice Series: Criminal Jury Instructions (Sup. 1994) § 10.8A, which included this definition.

the first prong of § 53-21. We further conclude that because a person of ordinary intelligence would reasonably know that threatening a child with physical harm in order to compel him to urinate in public in a dark area of a vacant building would expose a child to a risk of injury to his mental health, the statute, as applied to this defendant, was not unconstitutionally vague.

## II

The defendant next claims that the trial court improperly instructed the jury (1) by failing to instruct on the elements of risk of injury as the defense requested and (2) by permitting the jury to consider the "common sense of the community" in identifying situations likely to impair the health and morals of a child. We disagree.

"A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . *State* v. *Usry*, 205 Conn. 298, 316, 533 A.2d 212 (1987); *State* v. *Sinclair*, 197 Conn. 574, 581, 500 A.2d 539 (1985); see *State* v. *Wood*, 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). An instruction that fails to satisfy these requirements would violate the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. *State* v. *Anderson*, 212 Conn. 31, 36, 561 A.2d 897 (1989); *State* v. *Foster*, 202 Conn. 520, 537, 522 A.2d 277 (1987); *State* v. *Fleming*, [198 Conn. 255, 269–70, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986)]. . . . *State* v. *Avila*, [223 Conn. 595, 602–603, 613 A.2d 731 (1992)].

"The test of a charge is whether it is correct in law, adapted to the issues and sufficient for the guidance of the jury. *Berniere* v. *Kripps*, 157 Conn. 356, 358, 254

A.2d 496 (1969); *State* v. *Bell*, 153 Conn. 540, 219 A.2d 218 (1966) . . . . The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Vita* v. *McLaughlin*, 158 Conn. 75, 77, 225 A.2d 848 (1969); *Worden* v. *Francis*, 153 Conn. 578, 579, 219 A.2d 442 (1966). . . . *State* v. *Sumner*, 178 Conn. 163, 170, 422 A.2d 299 (1979). The purpose of a charge is to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case. *Shea* v. *Tousignant*, 172 Conn. 54, 59–60, 372 A.2d 151 (1976)." (Internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 509–10, 659 A.2d 1194 (1995).

## A

The defendant first claims that the trial court's charge to the jury was improper because the court "merely divide[d] the language of the statute into three elements," and failed to provide authoritative judicial gloss to cure the facial vagueness of the statute. The defendant asserts that because his requested charge properly stated the elements of risk of injury, the court improperly refused to adopt it.[6]

---

[6] The defendant's request to charge states in pertinent part: "2. Unless you find that the defendant created, or permitted the minor to be placed in, a situation in which he was likely to be subjected to deliberate, blatant physical abuse, you may not find that his health was likely to be injured, and you must find the defendant not guilty.

"3. Unless you find that the defendant created, or permitted the minor to be placed in, a situation in which he was likely to be subjected to lewd or indecent conduct and touch of a sexual nature, you may not find that his morals were likely to be impaired, and you must find the defendant not guilty.

"4. Our statute on risk of injury to a minor does not permit a conviction based on likely impairment of mental health alone. Therefore, unless you are satisfied beyond a reasonable doubt that some injury to the minor other than impairment of mental health was likely to result form the defendant's conduct, whatever you may find it to have been, you must find the defendant not guilty. . . ."

Although a trial court is required to instruct a jury as requested, the requested charge must represent an accurate statement of the law. *State* v. *Cooper*, 182 Conn. 207, 211, 438 A.2d 418 (1980). The defendant argues that the court should have instructed the jury that it could not convict him of risk of injury under the first prong unless the state proved that he either threatened the victims with blatant physical abuse or exposed them to lewd or indecent contact, and that the victims were exposed to injury other than injury to mental health. Neither the statute nor judicial gloss establishes, however, that a threat of blatant physical abuse is an element under the first prong. To violate the statute, a person need only create a situation that exposes a child to a likely injury to its health or morals. *State* v. *Perruccio*, supra, 192 Conn. 159–60.

Moreover, a conviction under the first prong does not, as the defendant claims it does, require proof that a minor was exposed to a threat of lewd or indecent contact. For that proposition, the defendant relies on *State* v. *Zwirn*, 210 Conn. 582, 556 A.2d 588 (1989). *Zwirn* held that when a prosecution is *based on an act of physical contact* that impairs the morals of a chid under the second prong, the state must prove that the predicate contact was committed in a sexual and indecent manner. Id., 588. Because the defendant in this case was not prosecuted under the second prong, *Zwirn* does not control. Finally, the defendant's assertion that the trial court had to instruct the jury that a conviction cannot be based solely on a likely impairment of mental health is incorrect for the reasons set forth under part I of this opinion.

Our review of the record reveals that the trial court adequately instructed the jury on the elements of risk of injury pursuant to the first prong under § 53-21. In clear and concise language, the court divided the crime into its three essential elements. The court stated that

(1) the jury had to find the defendant's conduct was wilful or unlawful, (2) the defendant created, acquiesced in or was deliberately indifferent to a situation that was likely to be harmful to the victim's health or morals, and (3) the victim was less than sixteen years old. The jury was properly instructed that "[t]here is no requirement that the defendant utilized threats" and that "it is not necessary that the defendant touch any part of the victim's body." The court also clarified facial ambiguities in the statute by defining several terms such as wilful, unlawfully and health.

Because the defendant's request to charge did not accurately state the elements of risk of injury under the first prong, we conclude that the trial court properly exercised its discretion in refusing to instruct the jury as the defendant requested.

B

The defendant's next claim regarding the jury instructions is premised on the following charge by the court: "The statute does not specify the situations being likely to impair the health and morals of a child. The common sense of the community as represented by you, the jury, as well as the sense of decency, propriety and morality which most people entertain is sufficient to apply the statute to any particular case." The defendant argues that this portion of the charge was improper because it allowed the jury to decide the case based on individual moral judgments.

The trial court based its "common sense of the community" charge on language this court quoted in *State v. Erzen*, supra, 29 Conn. App. 599, from *State v. Sousa*, 2 Conn. Cir. Ct. 452, 201 A.2d 664 (1964). Although we were not bound by *Sousa*; *State v. Johnson*, 28 Conn. App. 708, 716 n.5, 613 A.2d 1344 (1992), aff'd, 227 Conn. 534, 630 A.2d 1059 (1993); we found in *Erzen* that the common sense of the community was an appropriate

standard for a jury to apply in order to distinguish innocuous conduct from conduct that would violate the first prong of § 53-21. *State* v. *Erzen,* supra, 599. In the present case, as in *Erzen,* the jury had to determine whether the defendant's conduct violated the statute.

The record reveals that the trial court's instructions as a whole were correct in law and properly adapted to the issues. The court thoroughly explained, inter alia, the presumption of innocence, the state's burden to prove each element of the crimes charged beyond a reasonable doubt, and the jury's obligation to weigh all of the evidence objectively before reaching its verdict. The court also cautioned the jurors against permitting any personal feelings of sympathy, prejudice or bias to affect their decision making. We are not persuaded, therefore, that the jury, upon hearing that it could consider the "common sense of the community" to assess the defendant's conduct, in light of the entire charge, was misled in any way or that it disregarded its duty to base its verdict on the evidence rather than on the morals of the individual jurors. We conclude that the trial court properly permitted the jury to apply the common sense of the community standard under the facts of this case.

### III

The defendant next claims that the trial court improperly denied his motion for judgment of acquittal and for judgment notwithstanding the verdict on both convictions because there was insufficient evidence adduced at trial to prove that the defendant threatened the victims in order to compel them to urinate. Without proof of a threat, the defendant argues that no reasonable jury could convict him of risk of injury and coercion. We disagree.

"In accordance with well established principles, appellate analysis of a claim of insufficiency of the

evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Goodrum*, 39 Conn. App. 526, 531–32, 665 A.2d 159 (1995).

In analyzing the sufficiency of the evidence as it applies to the charge of risk of injury, we first note that a verbal threat to kill is not a required element of either prong. What is required is that the defendant either place a victim in a situation or commit an act that was likely to impair the morals or health of a child under the age of sixteen. *State* v. *Apostle*, supra, 8 Conn. App. 242–43. Therefore, we need determine only whether the evidence was sufficient to prove the required elements of risk of injury beyond a reasonable doubt.

The state's evidence of the ages of the three victims was uncontested; each was below the age of sixteen. The evidence also established that the defendant created the situation in which the victims were exposed to an injury to their mental health. The defendant approached the three boys in a dark hallway of an apartment building in their housing project and told them to "pee in a cup." The defendant stood in the doorway as the three boys exposed their private parts and urinated. R felt that he was not able to get out of the building. As a result of the defendant's conduct, R went home crying and told his mother that the defendant had threatened to kill him if he did not urinate.

After the incident, R had nightmares, was afraid to sleep alone, placed makeshift bars on his bedroom window and refused to talk for one week. We conclude that there was sufficient evidence adduced at trial to establish the elements of risk of injury to a child beyond a reasonable doubt.

We next review the sufficiency of the evidence regarding the defendant's conviction of misdemeanor coercion. To sustain this conviction, the state had to prove that the defendant compelled the victims to engage in conduct in which they had a legal right not to engage. See General Statutes § 53a-192. A defendant's conduct is culpable if it instills in the victims a fear that, unless they comply with the defendant's request, the defendant will "[c]ommit any criminal offense." General Statutes § 53a-192 (a) (1). In this case, evidence of the defendant's oral threat to kill R established that the victims were compelled to urinate out of fear that the defendant would commit a crime against them if they did not.

The following additional facts are relevant to this claim. Immediately after the incident, R told his mother and the police that the defendant threatened to kill him if he did not "pee" in the cup. During the ensuing police investigation, R repeated to Morris on at least five to eight occasions that the defendant had threatened to kill him. Although R's mother gave a written statement to the defense in which she stated that R had told her that the defendant did not threaten him, she later disclaimed that statement as a lie. T testified that she had lied to the defense investigator hoping to keep R out of court.

Reviewing this evidence in the light most favorable to sustaining the jury's verdict, we are convinced that there was sufficient evidence from which the jury could have found that the defendant threatened to commit a

criminal offense. The jury therefore could reasonably have found that the defendant instilled fear in the victims thereby compelling them to urinate. Further, there is no question that the victims had a legal right not to expose their private parts and urinate in a public place. We conclude that the cumulative effect of the evidence was sufficient to support the defendant's conviction of misdemeanor coercion beyond a reasonable doubt.

IV

The defendant next claims that the trial court abused its discretion (1) in refusing to issue a capias to compel the appearance of two witnesses subpoenaed by the defense who had failed to appear in court, and (2) in excluding evidence that the defendant had approached three other youths earlier on the day of the incident and had asked them to urinate in exchange for $1.

A

The following additional facts are relevant to the resolution of the defendant's claim regarding the capias. During the state's case-in-chief, the defense learned the identity of L, who R stated had been present at the incident. On Wednesday, June 23, 1993, Morris testified that he interviewed L immediately after the incident, but did not know L's current address. On June 24, the trial court recessed the proceedings until June 29.

On Wednesday, June 30, defense counsel informed the court of the following: On June 28, defense counsel and an investigator from the public defender's office went to L's home and interviewed him in the presence of his mother, S. Defense counsel then personally served S with a subpoena to have L appear in court on June 29, 1993, at 10 a.m. Later in the day on June 28, S telephoned the defense and stated she would be unable to arrive at court until 2 p.m. S and L failed to appear in court on June 29. The defense investigator again spoke with

S on the morning of June 30. At that time, S flatly refused to have L appear in court. The defendant then requested that the court issue a capias to compel the appearance of S and L, and the court denied the request.

The defendant argues that the court deprived him of his constitutional right to compel the appearance of witnesses for his defense. He claims that pursuant to General Statutes § 52-143[7] the court had the authority to issue the capias, and abused its discretion by not doing so.

Section 52-143 authorizes the trial court to issue a capias to compel the appearance of a witness who fails to appear without justification. The statute "does not, however, make it *mandatory* for the court to issue a capias when a witness under subpoena fails to appear; issuance of a capias is in the discretion of the court . . . [which] has the authority to decline to issue a capias when the circumstances do not justify or require it. . . . Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . [T]he action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Mitchell*, 8 Conn. App. 598, 604, 513 A.2d 1268, cert. denied, 201 Conn. 810, 516 A.2d 887 (1986).

In denying the capias, the trial court made the following findings. First, the defendant failed to indicate in

---

[7] General Statutes (Rev. to 1993) § 52-143 (d) provides in relevant part: "If any person summoned by . . . any public defender . . . fails to appear and testify, without reasonable excuse . . . the court or judge, on proof of service . . . may issue a capias . . . to arrest the witness and bring him before the court to testify." That provision is now § 52-143 (e).

the space provided on the subpoena how the subpoena was served. Second, the appropriate time for the defendant to have requested the capias was on Tuesday, June 29, 1993, at 10 a.m. when the witnesses failed to appear. At that time, the court could have compelled their appearance on June 30 without a delay in the proceedings. Third, the trial was near its conclusion and only six jurors remained. The court reasoned that a delay in the trial pursuant to a capias would risk the possibility of losing a juror, and the trial could not proceed with fewer than six jurors. The court further found that a capias was not justified because the defendant had ample opportunity to secure the appearance of S and L during the previous extended weekend recess and failed to do so.

In an abuse of discretion review, we must make every reasonable presumption in favor of the trial court's action. Id. Under the facts of this case, we cannot conclude that the trial court acted unreasonably in failing to issue the capias. The record reveals that the court made substantial inquiry of defense counsel pursuant to his request for the capias and provided adequate reasons for its denial. We conclude that the trial court properly exercised its discretion in refusing to issue the capias.

B

The defendant's final claim is that the trial court improperly sustained the state's objection to the testimony of two nieces of the defendant and two brothers who live in the housing project where the incident occurred. In an offer of proof through those witnesses, the defendant attempted to convince the court that it should allow them to testify as to statements made by the defendant and as to the defendant's demeanor earlier on the date of his arrest. Their testimony would indicate that the defendant had offered money to the

brothers and to other youths in the project, prior to approaching R, in order to obtain a urine sample.

The defendant sought to introduce this evidence to establish that he had not been angry, aggressive or threatening earlier on the day of his arrest to show that he acted in the same nonthreatening manner toward the victims. The state objected to all of the proffered testimony, and the court sustained the objection on relevancy grounds.[8]

"[T]he trial court's rulings on the admissibility of evidence are accorded great deference and will be disturbed on appeal only on a showing of clear abuse of discretion. . . . A trial court has broad discretion in its rulings on the relevance of evidence and in its determination of whether the probative value of evidence outweighs its prejudicial effect. Reversal is required only when there is an abuse of discretion or when an injustice has been done. . . . Evidence is considered relevant when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Garcia*, 37 Conn. App. 619, 633–34, 657 A.2d 691, cert. denied, 234 Conn. 917, 661 A.2d 97 (1995).

Our review of the record reveals that the trial court excluded the proffered evidence on the basis of its conclusion that the defendant's earlier conduct toward the other youths was not an appropriate barometer by which to gauge his later conduct toward the victims. The court opined, "I just don't follow the logic of that at all. It's like, for example, if I'm accused of bank robbery and my lawyer brings up the fact that I'd walked by a hundred banks in the last six months and never held up one of them. Does it prove anything?"

---

[8] The trial court also excluded the evidence on hearsay grounds.

We conclude that the trial court did not abuse its discretion in refusing to allow the defendant's witnesses to testify on the ground that the challenged evidence was irrelevant.

The judgment is affirmed.

In this opinion the other judges concurred.